O'CONNER, Defendant in Error, v. DUFF *et al.*, Plaintiffs in Error.

1. Where a surprise of a party on the trial of a cause results from a want of diligence on his part—as where he is surprised by the testimony of his own witness, from whom he had sought no information previous to the trial— the court will not be warranted in granting a new trial on the ground of surprise; the court should also be satisfied that the injury sustained could probably be repaired on a second trial.

*Error to Hannibal Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*Gantt*, for plaintiffs in error.

I. The court should have granted the motion for a new trial. (Wilson v. Branson, 8 Geo. 136; 3 Gra. & Wat. on N. T. 953; 9 Dana, 134; Lévy v. Brown, 6 Engl. 16.)

*Harrison, Dryden & Lipscomb*, for defendant in error.

I. The court properly overruled the motion for a new trial. There was no surprise that would justify the granting of a new trial. The proceedings of the defendant from the beginning were marked by negligence. (See 12 Mo. 380; Gra. & Wat. N. T. 194.)

EWING, Judge, delivered the opinion of the court.

The question in this case arises on the motion for a new trial, founded on the alleged surprise of the defendants by the testimony of one of their witnesses, whose affidavit is filed in support of the motion.

The action is on an agreement, under which the plaintiff claims to have sold and delivered to Duff & Co. a number of scoop-carts for use on the Hannibal and St. Joseph Railroad, at a stipulated price. The plaintiff was the inventor and patentee of this article, residing at Cincinnati, and he alleges a contract with defendants for the purchase of twenty scoop-

carts then in Peoria, Illinois, at eighty dollars each, and for plaintiff's charges as the patentee on thirty other scoop-carts, then in Cincinnati, at twenty-two dollars and fifty cents each; that these last were accordingly delivered at Cincinnati, and the other shipped from Peoria to Hannibal by request of Talcott, one of the defendants. The answer denied all the allegations of the petition.

Smith, a witness for the plaintiff, proved substantially the allegations of the petition, and detailed a conversation that occurred between the plaintiff and Talcott, one of the defendants, in which the plaintiff related to him the particulars of the agreement entered into with one Otis, representing himself as defendants' agent, and that Talcott assented to and approved of all that had been done by Otis, and said he knew that such a contract had been made by Otis for Duff & Co.; but added that they (the defendants) did not wish to have the carts at Peoria, but that if plaintiff would send the twenty carts that were there to Poage & Miller, at Hannibal, Duff & Co. would pay for them the eighty dollars each, on their arrival Hannibal, and the charges of transportation. It was also proved by this witness that the carts ordered from Cincinnati, upon their arrival at Hannibal, were by defendants sent, a part to Smith & Otis, on the railroad, which were subsequently disposed of, and the remainder, fifteen in number, sent to the western end of the road. Levering, a witness for defendant, corroborated this statement, and testified that the carts sent to Smith & Otis were charged to their account as sub-contractors under Duff & Co., and the remainder were sent to John Corby at St. Joseph, also a sub-contractor. This witness, who was Poage & Miller's clerk, states also that defendants' clerk, Southack, informed him that they (defendants) had ordered a lot of scoop-carts from Peoria to Miller & Poage, for themselves, and requested witness to take charge of them when they arrived, and notify Duff & Co.; that they were shortly thereafter received, having been sent by plaintiff, and upon so informing Southack

he replied it was all right, and witness was desired to take charge of them, which he did, and they were subsequently sold by Miller & Poage to pay charges.

Otis, (introduced by defendants,) by whose testimony they allege they were surprised, gives a detailed and circumstantial account of what took place between him and Duff, one of the defendants, in the course of which, after detailing what he stated to Duff as to the price, terms, &c., on which the carts could be purchased, testifies that thereupon Duff authorized him to contract with the plaintiff for one hundred carts on the terms stated by witness; that he was about leaving for Boston on business for defendants, and Duff directed him to make the purchase on his way; that before making it he concluded to buy but fifty instead of one hundred, thinking that number sufficient; and he entered into a contract with plaintiff, as instructed by Duff, for fifty carts, on terms which he states, and which are as averred in the petition; that the patentee's charges defendants were to pay plaintiff as soon as they disposed of the carts; and further agreed to take for defendants twenty carts at Peoria at eighty dollars each; that he made this contract with plaintiff at the instance of John Duff for John Duff & Co., and not on account of Smith & Otis. He corroborates other witnesses as to the disposition of the carts received from Cincinnati; that those sent to Monroe city were not used on the road; that he regarded the contract about the carts at Peoria as conditional, and that he expected plaintiff would see him again about them.

Southack, defendants' clerk, said that they paid the manufacturers at Cincinnati the amount for making thirty carts; that they were received by Duff & Co., and disposed of as already stated. Otis, in his affidavit filed in support of the motion for a new trial, states substantially that he and Smith had a contract with plaintiff, by which they were to make sale of his patent carts or use them on the railroad upon certain terms then stated; that they (O. & S.) were unable to

pay the manufacturers their price, and that Duff wished them to bring on a lot of the carts, and he would advance money for them to the manufacturers to enable them to obtain them, and Duff & Co. were to hold a lien on the carts until they were sold and the money refunded to them; that there was no agreement with Duff & Co. that they were to pay to plaintiff any thing on said carts; no agreement that Duff & Co. were to pay to O'Conner any sum as his patentee charges; that when the carts were sold, Smith & Otis were to pay O'Conner; that he sought to give this testimony on the trial, and if he was differently understood his evidence was misapprehended. The motion of defendants, which is sworn to, denies any such contract or any contract whatever as testified to by Smith & Otis; that their testimony is wholly untrue, and takes them by surprise; that they have a just defence to the action, and will make it appear, if a new trial be granted, by the next term of the court.

It will be seen from the foregoing statement that the two witnesses who testify more in detail as to the terms and stipulations of the contract agree in all substantial particulars, and that the other witnesses, as far as they go, corroborate them. Smith first details minutely a conversation between Talcott and the plaintiff, in which all the particulars of the agreement, as previously entered into between Otis (representing himself as defendants' agent) and O'Conner, are recited, which Talcott at once recognized, and unhesitatingly assented to; only suggesting a modification as to the place of delivery of the Peoria carts, to which Otis agreed. Next is Southack, who strongly supports Smith's testimony, proving a recognition by defendants of the agreement in ordering the carts from Peoria, and directing the disposition to be made of them on their arrival, and subsequently approving of what had been done in the premises. In further confirmation is Levering's statement, from which it would appear that the defendants treated the carts as their own property and not as the property of Otis & Smith. Lastly, Otis

himself, who, while agreeing with Smith in all essential particulars, states clearly that Duff authorized him as his agent to contract with O'Conner according to specified instructions; that he made it at the instance of John Duff for John Duff & Co., and not on account of Smith & Otis. The entire statement of the transaction by this witness is clear and intelligible, and certainly leaves nothing to mere inference or ·conjecture. But, as if to remove all possible ground of doubt or misapprehension as to his· meaning in reference to the decisive fact in the case, he repeats it (although it must have been sufficiently obvious from what he had already said) in the form and with the emphasis of a negative as well as an affirmative statement. His affidavit filed in aid of the motion unqualifiedly contradicts this statement, and it is hardly conceivable that he was misunderstood by the jury.

A conclusive reason, however, in support of the action of the court below in overruling the motion, is the manifest want of diligence that appears. The defendants say in their motion that until the testimony of Smith & Otis was given, they had no knowledge or information of it; but it does not appear that they sought any information from their own witness before he was sworn, or made any effort to ascertain what his testimony would be, and the evidence of this witness, it is maintained, must have mainly influenced the verdict. If the surprise results from the least want of diligence, the applicant will be without excuse; he must be wholly free from blame. (Gra. & Wat. N. T. 963.) And the court must be satisfied that the injury sustained may be repaired on a second trial.

The cases cited by the defendants' counsel do not sustain them, but, on the contrary, furnish such illustrations of the rule respecting diligence as sustain the action of the court below. In 9 Dana, 134, the witness, by whose testimony the party was surprised, had previously to the trial stated to the party calling him facts important to that side of the case materially different from those testified to under oath. The case in 8 Geo. 136, is similar, and the new trial was granted

on the same ground—the testimony of the witness on the trial contradicting his statement made to the party previously. In the other case cited (6 Eng. 16) one of the plaintiffs, who was made a witness by the defendant, testified before the justice to facts decisive of the case in favor of the defendant, and, on appeal, to a different state of facts. The court held that under the circumstances there was no want of diligence in not procuring other witnesses on the trial in the appellate court, and that there was good cause for a new trial on the ground of surprise.

It is generally in the power of a party to ascertain the facts he expects to prove by his own witnesses, and where this is omitted, when it may be done, *laches* is imputable to the party, and there is no legal surprise in such cases. See Nelson v. Waters, 18 Ark. 574, and 6 Cal. 228, where the rule is laid down without any qualification.

The application is also defective in another particular. It states " that they have a just and legal defence to the action, and that if a new trial be granted, they will be ready to prove their defence by the next term of the court." The names of the witnesses, by whom they expected to make this proof, do not appear, nor do they state any facts to satisfy the court that their defence could probably be established, or that they would be at all benefitted by a new trial.

Judgment affirmed ; the other judges concurring.