## Todd v. The State.

PRACTICE.—The refusal of the court to allow evidence to be given to the jury, if erroneous, is "an error occurring at the trial," and must be assigned as a cause for a new trial in order to present the question to the Supreme Court. Page 213.

NEW TRIAL.—SURPRISE.—The defendant may be entitled to a new trial on account of surprise caused by his own witness testifying differently from what he had a right reasonably to expect, where no want of diligence in guarding against such surprise is attributable to him, and where it is shown that he is injured thereby. Page 220.

SAME.—The motion for a new trial, in such case, is addressed to the sound discretion of the court, and in the exercise of that discretion the court should grant a new trial when the party is not in fault, and injustice has resulted to him from the surprise, which a new trial may remedy. Page 221.

APPEAL from the *Harrison* Circuit Court.

ELLIOTT, J.—*Todd* was indicted in the *Orange* Circuit Court for the murder of *Henry Hall,* by shooting him with a pistol.

On *Todd's* application the venue was changed, and the case transferred to the *Harrison* Circuit Court for trial. In the latter court the issue, upon the defendant's plea of "not guilty," was tried by a jury, and the defendant found guilty of manslaughter, and sentenced to fifteen years imprisonment in the State's prison.

A motion made by the defendant for a new trial was overruled, and judgment rendered on the verdict. The defendant appeals to this court.

The reasons filed for a new trial are:

"1st. The verdict is contrary to the law and the evidence.

"2d. Surprise at the trial, which ordinary prudence could not have guarded against." The second reason is not, in terms, very specific, but a bill of exceptions shows that it was based on affidavits, which are set out, and the cause of surprise thereby properly brought before the court.

The evidence is all in the record.

Other errors are assigned, upon the refusal of the court to allow evidence of certain facts, offered by the defendant, to be given to the jury, but as they were not presented as reasons for a new trial, they are not properly before us, and we cannot, therefore, notice them. If the court erred in rejecting the evidence, it was an error occurring at the trial, and should have been presented as a reason for a new trial, under the eighth specification of section 352 of the code. 2 G. & H., 211; *Kent* v. *Lawson*, 12 Ind. 675; *Doe ex dem., &c.,* v. *Hall*, 2 Ind. 24; *The State* v. *Swarts*, 9 Ind. 221.

We will first consider the question raised by the second reason presented to the court for a new trial, viz, "surprise at the trial."

In support of the motion, the affidavit of the defendant, and also of *Cyrus L. Dunham*, his attorney, were filed and presented to the court.

*Dunham* swears that the defendant went into the trial of the case with the confident expectation that he could prove by

*Henry Breden,* a witness for the defendant on the trial, that he saw the defendant and *Hall,* the deceased, immediately after the firing of the first shot, and that *Hall* was then in close pursuit of the defendant, his horse's head nearly up to or lapping the crupper of the horse ridden by the defendant, brandishing a corn-knife at or over him, as if endeavoring to strike him. That after he thus saw them, defendant fired four shots, *Hall* all the time appearing to pursue, and endeavoring to strike defendant; that *Hall* did not seem to slacken his pace until he fell, or was in the act of falling, from his horse, after all the shots were fired. That before the evidence was commenced, he, *Dunham,* had a conversation with said witness, in which said witness narrated what he saw and heard of said transaction substantially as above stated, and he so informed the defendant. That said *Dunham* and the defendant were completely surprised by the testimony of said *Breden* on the trial, in which he stated that a short space of time had elapsed after he had heard the first shot before he looked around where the parties were, and that when he did so look he did not see *Hall,* but saw the defendant; that he did not see *Hall* until after the second shot had been fired, and that when he did first see him he was about twenty steps behind said *Todd.* That he, *Dunham,* was sometime previously informed by *Morrison Scott,* and believed that defendant could prove by said *Scott,* that said *Hall* was close upon said defendant, endeavoring to strike with his corn-knife, and threatening to kill him, when defendant first shot at *Hall,* and that he continued to pursue and endeavor to strike the defendant with the corn-knife until after the last shot was fired. But that the said *Dunham* believed the defendant ought to, and safely could, go to trial on the evidence of said *Breden,* as he expected, as before stated, it would be.

The defendant in his affidavit states that, on the trial, he was taken perfectly by surprise, by the testimony of said *Breden,* a witness called for the defendant, when he testified that he did not see *Hall,* the deceased, at the time of the

shooting, which resulted in his death, until after the second shot was fired by the defendant, and that at that time said *Hall* was twenty steps behind the defendant, but riding toward him brandishing his corn-knife. The defendant further states that he had been informed before the trial, and before he had consented to go into trial, and believed the statement true, that said witness, *Breden*, saw both the defendant and *Hall* immediately after the first shot was fired, at which time *Hall* was close behind the defendant, the head of *Hall's* horse being up to or lapping the crupper of the defendant's horse, both parties riding rapidly, the defendant from said *Hall*, and he in pursuit of the defendant, with his corn-knife uplifted toward, or over, the defendant, and apparently gaining on him, when the four shots were fired by the defendant in rapid succession, and all before *Hall* fell or slackened his pace. That he went into the trial mainly relying upon the testimony of said witness for his defense; that the facts were as he expected to prove them by said witness, and that he could prove them substantially as stated, by *Morrison Scott* and *Samuel Mix*. That said *Scott*, at the time of the trial, was absent from the State, at *Cape Girardeau, Missouri*, as the defendant was then informed; that he had caused him to be duly subpœnaed as a witness on said trial. That said *Mix* is a private in ——— regiment and was not at said trial, and was then absent on duty with his regiment in the rebel States, and he could not therefore procure his attendance. That the defendant had been for some months confined in jail, and not able to give bail, and relying on what he believed he could prove by said *Breden*, and that it was sufficient for his defense, he went into the trial. That, if a new trial were granted him, he believed he could, on such trial, procure the testimony of said *Scott* and *Mix*; that, owing to their absence, he could not procure their affidavits in support of the motion for a new trial. That said *Scott* was nearest to defendant at the commencement of the difficulty, and that he could further prove, by

him that *Hall*, the deceased, actually struck at the defendant once or twice with his corn-knife, and barely missed him, threatening at the same time that he would kill him, all before the defendant fired the first shot at said *Hall*.

The bearing of the facts which the defendant and his counsel swear they confidently expected to prove by the witness, *Breden*, upon the merits of the case, will more fully appear by a statement of some of the material facts of the case as they appear from the evidence given on the trial. It appears that the defendant, a minor, was a member of a military company in the service of the State, encamped near *Leavenworth*. The company was ordered to *Orange* county to arrest deserters from the military service. After reaching *Orange* county, the company was divided into two squads; to one of which, numbering about twenty men, under the command of a lieutenant of the company, the defendant belonged. This squad stopped at the town of *Paoli* for the purpose of procuring dinner for the men and feed for the horses. *Hall*, the deceased, resided some distance west of *Paoli*. He was in *Paoli* when the soldiers stopped there. He had purchased, of a merchant in town, a corn-knife, having a blade about two feet in length, and was intoxicated. He was on horseback, and brandishing the corn-knife and giving orders to the soldiers. He was boisterous and annoying.

In leaving town, the squad of soldiers went immediately south. *Hall*, about the same time, started in the direction of his home, but turned and passed across into the road the soldiers had gone, and followed them. Two, or perhaps three of the soldiers, one of them being the defendant, from some cause, probably to adjust a saddle or girth, had fallen a little distance behind the body of the command. *Hall* came up to them, and in some way a difficulty originated between him and the defendant. Neither of the other persons who were with the defendant was present at the trial, and there was no evidence on the trial disclosing the cause of the difficulty, or how it originated. The report

Todd *v.* The State.

of a pistol in the direction where they were, first attracted the attention of the soldiers who were in advance. Soon after which the defendant was seen riding toward the command at the full speed of his horse, *Hall* close to him in rapid pursuit, gaining on him and brandishing his corn-knife. The defendant, during this time, with his hand turned partially behind him, was firing on *Hall* with a pistol, until five shots were fired, when *Hall* reeled in his saddle and fell, mortally wounded. One load remained in the pistol undischarged. The five shots fired all took effect, one in the nose of *Hall's* horse, one in his shoulder, and three in *Hall's* body. When the last shot was fired, *Hall's* horse was lapping on the defendant's horse.

No principle is more fully recognized in the law, than that which allows a person when unlawfully assailed with a deadly weapon, and his life or limbs thereby put in imminent peril, to kill the assailant, in self-defense. It was upon this principle that *Todd* based his defense in this case, and it was certainly important to him and his defense, as it was not in evidence before the jury how the difficulty originated, to be able to prove that almost instantly after the first shot was fired he was seen fleeing, and *Hall* in close pursuit, endeavoring to strike him with a deadly weapon. These facts, as shown by the affidavits of the defendant and *Dunham*, his attorney, the defendant had good reason to believe he could prove by *Breden*, and for that reason alone went into the trial in the absence of other witnesses, by whom, as he states in the affidavit, he could fully prove them. If the facts stated in the affidavits were true, there was no fault or *laches* on the part of the defendant. He relied on the personal statements of *Breden* to *Dunham*, the attorney, who communicated them to the defendant, and it was reasonable, under the circumstances stated, that he should do so.

The affidavits establish a clear case of surprise, without the defendant's fault, and we think should entitle the defendant to a new trial, if a new trial can be granted in

favor of a party for surprise occasioned by a witness, called by himself, testifying differently from what he had reason to expect.

It is insisted by the Attorney General that surprise, under such circumstances, affords no ground for a new trial.

In *Cummins* v. *Walden*, 4 Blackf. 307, BLACKFORD, J. says: "It is a general rule, indeed, that a plaintiff, after a verdict against him, can have no claim to a new trial on account of his having been surprised by any evidence of the defendant. If the plaintiff finds himself unprepared to meet the defendant's evidence, he always has it in his power to suffer a nonsuit, which will leave him at liberty to sue again for the same cause of action. It would be giving the plaintiff too great an advantage to permit him to take the chance of a verdict, and when it is lost to relieve him from the verdict and give him the chance of another jury, merely because the evidence against his claim was stronger on the first trial than he expected it would be." He refers to *Price* v. *Brown*, 1 Strange 691; *Cooke* v. *Berry*, 1 Wilson 98; *Harrison* v. *Harrison*, 9 Price 89; *Jackson* v. *Roe*, 9 Johns. 77.

In *Graeter* v. *Fowler*, 7 Blackf. 554, which was a motion by the plaintiff for a new trial on the ground of surprise, occasioned by his own witness giving different evidence from that which he expected him to give, it was held that he was not entitled to a new trial on the ground stated. The reason given for the decision is not that, being the plaintiff in the suit, he might have avoided the verdict when he found himself deceived or disappointed in the evidence, as in the case of *Cummins* v. *Walden*, *supra*. But SULLIVAN, J., in deciding the question, says: "We have met with no case where a new trial has been granted because a witness swore contrary to the expectation of the party who introduced him. If that were a good cause for setting aside a verdict, new trials would be endless, because the unsuccessful party in every suit might allege that his witness

deceived him. Where there is trick, or where the witness has been tampered with by the other party, so that he is influenced to swear falsely, the case may be different. In *Hewlett* v. *Crutchley*, 5 Taunt. 277, the chief justice, on a motion for a new trial on the ground that the defendant had been surprised by what his witness swore to, says that such a thing never was heard of. We think it would be establishing a dangerous precedent to grant a new trial for the reason urged in this case."

We have examined the case of *Hewlett* v. *Crutchley, supra,* and do not understand the refusal of the court to grant a new trial in the case to have been based on the ground that a new trial would in no case be granted for surprise occasioned by the testimony of the party's own witness. True, Chief Justice MANSFIELD made the remark as stated, but HEATH, J., in the same case, said: "As to the evidence of the barrister, if it clearly appeared to my satisfaction that the witness was surprised, and gave evidence contrary to the expectation he had raised, I would send it to a new trial. But no such thing appears." And CHAMBRE, J., said: "I entirely agree that the court ought not in this case to interfere with the province of the jury, although there are cases in which the court may properly do that, but this is not one of them."

*Guard* v. *Risk*, 11 Ind. 156, was an action for slander, in which the defendant had charged the plaintiff, a female, with fornication. The defendant justified, and there was a verdict for the plaintiff. In support of a motion for a new trial, the defendant filed an affidavit that *George Vestal,* prior to the trial, had told *William Hall* and *James Black* that he, *Vestal,* had been in bed with the plaintiff, and the plaintiff having been informed of *Vestal's* statement, filed the plea in justification; that he introduced said *Vestal* as a witness on the trial, and he testified that he never was in bed with the plaintiff, never had illicit intercourse with her, and never saw any improper conduct on her part. It is

clear that the affidavit afforded no reason for a new trial. The defendant may have been surprised by the evidence of the witness, but he did not show that he could prove the justification by any other witness, who was not present, nor that he had used reasonable diligence in guarding against surprise, or that he was injured thereby. The court said: "The facts thus stated afford no reason for a new trial," and add, "Indeed, this court has expressly decided that a party is not entitled to a new trial on the ground of surprise, occasioned by a witness whom he has called giving different evidence from that which he was expected to give," and refer to *Graeter* v. *Fowler, supra.*

In *Ruger* v. *Bungan,* 10 Ind. 451, a motion was made by the defendant for a new trial on the ground of surprise, occasioned by the testimony of his own witness. PERKINS, J., says: "The party says he was surprised by the testimony of one of his witnesses. He does not say that the witness will testify differently upon another trial, nor that he had used any diligence to ascertain what would be his testimony." No reference is made to the case of *Graeter* v. *Fowler,* 7 Blackf., nor is the decision put upon the ground that a defendant cannot be entitled to a new trial for surprise, caused by the testimony of his own witness.

In *Rosencrants* v. *The State,* 6 Ind. 407, a new trial was granted to the defendant for surprise, occasioned by the evidence of a witness introduced by the State.

We have thus referred to all the cases decided by this court, having a material bearing on the question under consideration, and we do not think that they sustain the position that the defendant may not be entitled to a new trial for surprise, caused by his own witness testifying differently from what he had the right reasonably to expect, where no want of diligence in guarding against such surprise is attributable to him, and where it is shown that he is injured thereby.

It is not our purpose here to question the correctness of the ruling of the court in *Graeter* v. *Fowler, supra.* The application for the new trial was made by the plaintiff, and the case, therefore, came clearly within the rule laid down in *Cummins* v. *Walden,* 4 Blackf. 307, to which we have referred, but we think the reasons given by the learned judge are stated too broadly.

New trials have frequently been granted because of a material mistake made by a witness in his evidence against the party by whom he was called, thereby causing injury to such party. See the cases referred to in 1 Graham & Waterman on New Trials, pp. 214 to 220, inclusive.

What difference is there in principle, whether the party has lost a verdict by a mistake of his witness in a material matter, or by being misled by his witness as to the facts within his knowledge, and thereby induced to go to trial in the absence of other witnesses by whom the facts could have been established? In the one case, the witness knows the facts and fails to testify to them, and in the other he induces the party to rely on his knowledge of them, and then fails him on the trial. The effect upon the interests of the party is the same.

Motions for new trials, for such causes, are addressed to the sound discretion of the court, and in the exercise of that discretion, the court should grant a new trial when the party is not at fault, and injustice has resulted to him by the surprise, which a new trial may remedy.

In view of all the facts of the case, as shown by the evidence given on the trial, and by the affidavits filed in support of the motion, we think the court below should have granted a new trial.

A careful examination of the evidence has not fully satisfied us that it sustained the finding of the jury, but we do not deem it necessary to discuss it here, as, upon another trial, other evidence may shed a different light on the case.

The judgment is reversed, and the cause remanded for a new trial. The clerk is directed to issue the proper order, &c.

*C. L. Dunham*, for appellant.

*D. E. Williamson*, Attorney General, for the State.