## CHARLES TALLMAN

*v.*

## SIMON BECKER *et al.*

1. CHANCERY—*new trial at law.* A court of equity will only grant a new trial at law in cases of fraud, accident or mistake, and then only where the party applying for equitable aid is free from all negligence and has used the highest degree of diligence to prevent the fraud, accident or mistake.

2. As a general rule, the refusal of a witness to attend, or his failure to testify to the truth when called, whether his purpose be to injure and defraud the party, or from want of memory, or other cause, does not form such accident or mistake as entitles a party to maintain a bill for a new trial at law. It is not every slight mistake or accident that will give a new trial.

3. The accident or mistake must be unavoidable by the use of diligence by the party, and of such a character as to control without doubt the result of the suit, before equity will interfere to grant a new trial at law.

4. Where the opposite party, by active fraud, deprives the other of evidence by preventing the attendance of witnesses, by suborning them, by destroying documents or papers not his own, or, by any such practices, deprives the other party of a legal right by fraudulent means, if such advantage has controlled the case and led to the judgment in his favor, and after the use of all proper diligence to prevent it, a court of equity will award a new trial at law.

5. Where the evidence relied on for granting a new trial is merely cumulative, and not decisive in its character, a new trial will not be granted, and the rule is the same in equity as at law.

6. Where a party goes to trial at law, without seeing a witness to refresh his memory as to a fact in the defense, and, after verdict against him, makes no effort to refresh the memory of the witness until after judgment, this will be such *laches* on his part as to preclude him from equitable relief on the ground of the subsequent recollection of the witness of the fact sought to be proved, and which the witness had forgotten on his examination.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. WILLIAM BARGE, and Mr. EGBERT JAMIESON, for the appellant.

Mr. ADOLPH MOSES, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill for an injunction to stay the collection of a judgment. It alleges, that appellees, in September, 1872, commenced a suit against appellant, in the Cook circuit court, and he appeared and pleaded to the action; that the suit was on a claim growing out of a note executed jointly by appellees and appellant, of which, upon being negotiated, appellant, as was claimed by appellees, obtained the full proceeds and held the same. Appellees claimed they had been required to pay the note, and that appellant was liable to refund the same to them; that on the 8th of October, 1875, the cause was tried by the court and a jury, and a verdict was rendered against appellant for $850.03; that a motion for a new trial was entered, but overruled; that appellees remitted $429.35 from the amount of the verdict, and judgment was rendered for the balance.

The bill alleges, that when the suit was commenced appellant had a complete defense at law, but was prevented from making it without fault on his part; that after the note was made, appellees instituted criminal proceedings against him for the purpose of enforcing the collection and payment of the note; that whilst the prosecution was pending and he was in custody, appellees accepted of appellant $572 in full satisfaction, discharge and payment of all claims and demands against appellant, on account of the promissory note and all other claims,—the note was the only claim appellees ever held against appellant; that they thereupon gave to him a receipt, in and by which they released him from the note and all claims and demands; that this receipt was destroyed by the Chicago fire of October, 1871; that the claim or demand thus compromised and released was the same identical claim upon which that suit and recovery were had.

The bill alleges, that one Asay, an attorney, acting as such for appellees, had made the settlement, compromise and arrangement with appellant, and had received payment of their claim; that on the trial of the cause he put Asay on the stand

as a witness, under the belief that he would remember and testify to the circumstances of the settlement and satisfaction of the claim; but on being repeatedly interrogated as to the settlement and payment, he had forgotten the same and all of the circumstances connected therewith, greatly to appellant's surprise; that after the trial, and after the adjournment of the court for the term, and after the overruling of a motion for a new trial, and the rendition of the judgment sought to be enjoined, appellant saw Asay, and upon conversing with him on the subject he then remembered the transaction and its particulars, and made an affidavit of the fact, which is filed with this bill; that appellant was unable to prove these facts by any one but Asay and himself; that execution had been issued on the judgment and returned *nulla bona*, and appellees had filed a creditors' bill, in the Superior Court of Cook county, to get possession of appellant's property to satisfy the judgment and thus collect their debt a second time from appellant.

The prayer was, that the promissory note be surrendered up and canceled, and the judgment set aside and vacated, and that appellees be enjoined from further prosecuting their suit to reach appellant's property to satisfy the judgment. Appellees filed a demurrer to this bill, which the court sustained, and dismissed the bill, and complainant prosecutes this appeal to reverse that decree.

It seems to be conceded that a court of equity will only grant a new trial at law in cases of fraud, accident or mistake, and then only where the party applying for equitable aid is free from all negligence, and has used the highest degree of diligence to prevent the fraud, accident or mistake. Nor is it every species of fraud, accident or mistake that will entitle the party to such relief. As a general rule, the refusal of a witness to attend, his failure to testify to the truth when called, whether his purpose be to injure and defraud the party, or whether from want of memory or other cause, does not form such accident or mistake as entitles a party to maintain a bill for a new trial. If such were regarded as proper grounds for relief, but few, if any, strongly contested cases would ever ter-

minate. After each recurring new trial some witness could be found who would correct his evidence in some particular, on another and further trial, upon the ground of his having forgotten or been mistaken in some portion of his evidence on the former trial. It is not every slight mistake or accident that will give the new trial.

In all cases of this character the accident or mistake must be unavoidable by the diligence of the party, and of such a character as to control, without doubt, the result of the suit, before equity will intervene to afford relief. Where the opposite party, by active fraud, deprives the other of evidence by preventing the attendance of witnesses, by suborning them, by destroying documents or papers not his own, or, by any such practices; he deprives the other party of a legal right, by fraudulent means, if such advantage has controlled the case and led to the judgment in his favor, and after the use of all proper diligence to prevent it, and the case has progressed to a point that the court at law in which it was tried, before the fraud is discovered, can not correct the wrong, in such cases a court of equity will relieve. But, in all cases, whether for fraud, accident or mistake, it must not be the result of carelessness or negligence of the party complaining, even when they control the result of the suit.

We are aware of no case in which it has been held, that, where there are several witnesses called to testify to a particular fact, and one of them fails to testify to the truth from want of memory or otherwise, if other witnesses testify to the truth on that point, equity has interfered. It may be a misfortune to the loser, but it is of that character that is without remedy. All litigation and strife must have an end, and courts will not try experiments simply to ascertain whether a different verdict might not be produced.

Appellant has referred to no case where a party claiming to be defeated by the want of recollection of a witness, in which equity has granted a new trial. Nor do we believe a case can be found in which such relief was granted on the want of memory of a witness whose testimony was only cumulative.

Even if the evidence forgotten by a witness, supposed to be conclusive, would be ground for granting relief, which may be doubted, it surely can not be held, where the evidence is merely cumulative, and not conclusive in its character, that equity will grant a new trial. Such is not the rule at law, nor can it be broader or less strict in equity. It may be difficult to define the kind of accidents or mistakes which will authorize a court of equity to interpose its power, but we can not imagine a case where the forgotten testimony is only cumulative and not conclusive, that the court will relieve.

In this case it is not alleged that appellant testified in the case, but we presume he did. If not, he failed to make his defense at law; and if so, then he is not in a position to ask a court of equity for relief, whatever other grounds he may have. The bill is silent as to whether appellees testified, but we presume they did; and, as the jury found a verdict in their favor, we must suppose that they denied the payment claimed by appellant. Then, if he testified to the payment, and they in their testimony denied the payment, and Asay were to corroborate appellant, then there would be a direct conflict of two witnesses against two others, and who could say the result would or should be changed if a new trial were decreed, or that, on a hearing in equity, the evidence for appellant does or should preponderate over that of appellees.

It may be said, that Asay is disinterested, whilst the others are interested, they being parties to the suit. In reply, it may be said, the evidence of a witness whose memory is so treacherous as Asay's is shown to have been in this case, can not have much weight attached to it. It certainly is, at least, worth much less than the evidence of the same person with a clear, distinct recollection and a tenacious memory. In this view of the case, we are unable to see that a new trial would, or even should, change the result.

Again, appellant does not allege that he saw or learned from Asay, before the trial, whether he remembered the facts he expected him to prove. It would seem to be strange, that, after such a lapse of time, he did not, during the three years

the suit was pending, even endeavor to learn whether the witness remembered the facts. Asay seems to have been a lawyer in practice in the city, and we are of opinion that it was *laches* to fail to ascertain whether he did remember. Had appellant seen him before the trial, the same means employed then that were resorted to afterwards would, no doubt, have restored his recollection. That no such effort was made to learn to what facts he would testify, in such a length of time, would seem to be gross negligence, if not entire indifference to results. It indicates the want of diligence in an effort to make his defense at law.

The fact, too, that after the rendition of the verdict and pending the motion for a new trial, no effort is shown to see Asay and to refresh his recollection. But the time was permitted to expire, the motion overruled, the judgment rendered, and the term closed, before Asay is seen, and then, apparently by no great effort, the witness was enabled to recall to memory the desired facts. What is more natural than where a party knows facts to be true, and the witness testifies that he has forgotten them, almost at once for the party to see and talk with the witness, to learn whether his memory can not be refreshed. It seems to us that such a course would suggest itself to the most careless and unthinking, who have any regard for their own interest. In this case nothing of the kind was done, which manifested great indifference to the result of the case. There was almost a total want of effort and diligence in attempting to assert his rights at law.

In the view we have taken of this case, we have deemed it unnecessary to inquire whether, had there been ground of relief, it should not have been interposed as a defense to the creditors' bill. Or, whether one chancery proceeding can be instituted and maintained to enjoin another proceeding in a court of equity.

Perceiving no error in this record, the decree of the court below must be affirmed.

*Decree affirmed.*