Daniels, J.
The action was for the recovery of a pair of single-stone diamond ear-rings valued at the sum of $1,400. They were purchased by the defendant of Elijah Miers, and the recovery in the action was had for the reason that Miers was not authorized to sell them. They were the property of the plaintiffs at *466 the time when they were placed in his possession, and a receipt for them was signed by him, stating that he had them on approval to show to his customers, and that they -were to be returned to the plaintiffs on demand. Miers was sworn as a witness on behalf of the defendant upon the trial of the action, and before the trial it was discovered by the defendant’s counsel, that an important and essential point in the case was whether Miers had been authorized by the plaintiffs to sell the diamonds. The importance of this subject led to an interview between the defendant’s counsel and one of the plaintiffs, in which, it has been stated in the affidavit of the former, it was conceded by Smith that Miers had authority to sell the diamonds. This was afterwards also made the subject of examination when the testimony Of Smith was taken upon the trial, but he denied having made the alleged statement, and no evidence was given to- contradict his denial. These facts warrant the conclusion that both defendant and his counsel were fully aware before the trial, of the importance of proving that Miers was authorized to sell the diamonds. But he himself was not interrogated as a witness upon the trial upon this subject, and that omission is stated to have arisen from the circumstance that he had previously denied his ability to give evidence establishing such authority. But after the trial had taken place, with an adverse result to his purchaser, he then disclosed his ability to give such testimony, and it is chiefly upon the expectation that it may be obtained from him, that the application was made to set aside the verdict. But inasmuch as the defense was aware of the necessity of establishing this fact upon the trial to successfully resist the plaintiffs action, the omission to interrogate Miers upon it subjects the defendant to such a charge of neglect or laches as under the authorities to preclude the success of the' application. If the au *467 thority existed at all, as long as it was denied by the plai ntiffs, Miers was the only person from whom such proof could be obtained. And that degree of diligence which is required on the part of parties to a litigation would not only suggest, but require, that he should have been interrogated upon this subject, even though he had previously denied his ability to give the evidence. If it could be obtained at all, it could only be from him, for he was the person who must have known the fact, if it existed at all. Legal diligence would have suggested the propriety of interrogating him upon the subject when he was a witness in the case. For it is notorious that persons from whom evidence is derived are not always willing in preceding conversation, to disclose all they may have the ability to state. There was no want of time for reflection or deliberation upon this subject, for the trial consumed portions, or all, of two days, and it was entirely apparent from its progress, that this was a controlling point in the case, and it was then that this witness should have been pressed for the information, if he had been able to give it. And when so pressed under the solemnity of an oath, if the authority in fact existed, he could not as an honest witness have concealed the truth. He was interested himself in maintaining the defendant’s title and was examined as a witness in support of that interest, and if the examination had been made more searching, the evidence, if it could in fact have been given, would have been obtained, and the failure to make an effort in that manner to obtain it, was a legal answer to the application which was made. The case in this respect was not unlike that of Gautier v. Douglass Manuf. Co. (52 How. Pr. 325; affirmed 13 Hun, 514). And Fellows v. Emperor (13 Bario. 92), is of the same legal import.
If the verdict should be set aside, and another trial for this cause directed, the preceding denial of Miers *468 of his ability to give the evidence, would be a very strong circumstance affecting his credit as a witness concerning this fact. For it would show that when all the obligations of truth and friendship were brought before him, he had afterwards denied his ability to give such testimony, and that denial could properly be introduced in evidence to produce his impeachment, and the positive evidence of Smith also to the contrary would probably render such testimony, if it should now be given, ineffectual in the case. The excuse of Miers for his denial, which was that he stood in tear of some legal prosecution by the plaintiffs if he gave the evidence, would not relieve him from this result. For no legal advantage could be secured by them by reason of the evidence, if it was true, t which would subject him to any charge of that description. It might be claimed, in view of the receipt signed by Mm, and the positive evidence of Smith, that he could be prosecuted, if he gave the testimony, for perjury. But the danger of such a prosecution would be no less to him, if the evidence should be given upon any other trial, than it would have been if he had so testified upon the trial which has already taken place. This circumstance, therefore, would form no reasonable or legal excuse for his denial, when asked upon that subject, of his ability to give this evidence. But he would still be left to the full force of his contradictory statement, and the evidence given by Smith and that furnished by the receipt which was probably executed by Miers, at or about the time of its date. For these reasons also the application could not properly prove successful. For the law requires, to justify the direction for a new trial because of newly discovered evidence, that the evidence shall appear to be so far controlling as to probably produce a different result from that reached upon the trial already had. And where the newly discovered evidence is not of so forcible a *469 character, the practice requires the denial of the application (Schultz v. Third Ave. R. R. Co., 47 Super. Ct. [J. & S.] 285; Barbee v. Elwood, 57 Barb. 359, 361; Powell v. Jones, 42 Id. 24, 29; People v. McGuire, 2 Hun, 269).
It is not necessary to inquire whether the evidence would be reliable which might be obtained, in contradiction of this statement of Miers, from Plumb. For if it be conceded that he could be impeached because of his general bad character, it would not follow from that circumstance that any controlling credit whatever could be given to this further statement of the witness Miers. For, in addition to the facts which have already been referred to, subjecting such statement to doubt, it would also be a subject of suspicion upon the further fact that a trial has already been had, and this evidence has first been since suggested for the purpose of meeting the emergencies in the case, and supplying the deficiency in which it seems to have been most essentially wanting. The fact itself that after a trial has been had, a witness who has been sworn and examined in the course of it, declares his ability to give further evidence, meeting a controlling point in the litigation upon which evidence was not given, very seriously subjects the statements of such a person to suspicion.
The motion which was made to set aside the verdict was properly denied, and the order should be affirmed, with §10 costs besides disbursements.
Beady, P. J., concurred.
Note on Witnesses causing Subpbise.
Preparation.'] It is proper for attorney or counsel not only to confer with intended witnesses, before trial, in order to learn what they will testify to, but even to refresh the memory of an intended witness in anticipation of the examination (Tallman v. Beecher, 85 *470 Ill. 183; Howell v. Howell, 37 Mo. 124, at 128). And even in case of a deposition, by showing him the interrogatories, where dates, &c. are called for. Allen v. Seyfried, 43 Wis. 414.
But such a conference is ordinarily a proper subject of cross-examination by the adversary.
And the making of any suggestion to an intended witness as to what it is desired he shall testify, is a fact which goes to qualify the weight of his testimony. Allen v. Seyfried, 43 Wisc. 414. In the last mentioned case, the court below instructed the jury that permitting a witness to read the direct and cross-interrogatories before giving his testimony, tended to defeat the entire purpose of a cross-examination, by enabling a witness to think out and prepare in advance his answers; and that a deposition taken under such circumstances was not entitled to the same weight as a deposition taken where the witness had not studied the interrogatories in advance of giving his testimony; and the appellate court held that giving such instructions was a better course than to suppress the deposition.
Interrogating to discover.] How far a party may on the trial put questions to a witness for the purpose of ascertaining whether other evidence exists, that is to say, how far he may use the trial for purposes of investigation, necessary in order to complete his proofs, does not seem to have been decided in reported cases. It is often done incidentally. The rule seems to be that counsel has not an absolute right to interrogate his own witness merely for the sake of. ascertaining the name of a person whom he may wish to call as a witness, when the name is not relevant to the issue, but is merely sought by way of discovery to enable him to make inquiry out of court, or to subpoena a person as a witness. (In illustration of this principle see United States v. Webb, 8 Ben. 343.) But, on strict cross-examination, where great latitude is allowed, without being limited to matters relevant to the issue, questions which may have this object are not improper if not improper on other grounds. And the same principle may apply to the examination of one’s own witness in a case where the methods of cross-examination are allowable because of hostility.
Gross-examining and contradicting one's own witness.] Where a party is surprised by the testimony of his own witness, he may interrogate him as to his previous declarations inconsistent with his evidence, for the purpose of probing his recollection, recalling to his mind the statements he has previously made, so that the witness may explain his apparent inconsistency, or correct his evidence, and also for the purpose of showing the circumstances which induced the party to call him. Bullard v. Pearsall, 53 N. Y. 230; Coulter v. American *471 Merchants’ Union Express Co., 56 N. Y. 585, 590; Hemingway v. Garth, 51 Ala. 530.
But this cannot be done, it seems, where the sole object and effect s to discredit the witness. Bullard v. Pearsall (above).
Where the previous declarations are in writing,—as for instance in an affidavit,—the paper cannot be shown to the witness on the stand to refresh his memory by the party who called him, but he may be interrogated in regard to it, to enable him to explain his inconsistency. Houstine v. O’Donnell, 5 Hun, 472, 474.
But if the witness denies having made previous statements inconsistent with his testimony, it is settled in New York, and (aside from statutes) it is the general rule elsewhere, that the party who called him cannot contradict him by other witnesses as to having made the statements ; although it is settled and familiar law that the party may prove the. facts of his case by other witnesses, even though his own witness is thus indirectly impeached. Bullard v. Pearsall, and Coulter v. The Am. Merchants’ Union Express Company (above).
See also the late case of Cox v. Eayres, 55 Vt. 24, where the authorities are reviewed.
One of the authorities most favorable to latitude of examinatiou is State v. Renner, 64 Me. 267, where at 280, the court says :
“ Cross-examination may be as necessary to elicit the truth from one’s own, as from one’s opponent’s, witness. When the necessity exists, equal latitude should be allowed in the one case as in the other.” The court is to judge of the occasion for it, i. e., whether witness is hostile or not., and the judge’s discretionary ruling is not a subject of review or of exception.
See, also, article by Mr. May, 11 Am. Law Rev. 261.
There is considerable authority for the proposition that where a party is compelled by law to call a witness, such as the subscribing witness to a will, etc., he may contradict or otherwise discredit him; and this is put on the ground that the party has no choice and the witness “ may well be regarded as a witness of the law rather than of the party.” Cox v. Eayres, 55 Vt. 24, 34 (citing Thornton’s Ex’rs v. Thornton’s Heirs, 39 Vt. 122); Cowden v. Reynolds, 12 S. & R. (Pa.) 281; Williams v. Walker, 2 Rich. (S. C.) Eq. 291; Shorey v. Hussey, 32 Me. 579. Compare 2 wend. 166, 483; 7 Cow. 238.
And in some States, by statute, a party is allowed in any case to prove that his witness has at other times made statements inconsistent with his present testimony, provided the circumstances of the supposed statements, sufficient to designate the particular occasion, are first mentioned to the witness, and lie is asked whether he made such *472 statements, and allowed to explain them.' See Mass. Pub. Stat. c. 169, § 22, and Brooks v. Weeks, 121 Mass. 433.
Incapacity of witness-l It was held in Crim v. Handley, 94 U. S. (4 Otto) 652 (a case where it was sought in equity to enjoin a judgment at law), that it was not sufficient ground for relief, to show that a witness upon whom the parly relied, was so sick during his examination as to impair his recollection of fact's within his knowledge; nor that the record of a prior suit upon which the defendant relied was lost, or could not be found by the clerk of the court. Chtfobd, ■J., said': “ Accidents of the kind occasionally occur in the course of trial; but the'plain remedy for such an embarrassment is an application to the court to postpone the trial or to continue the case, as the circumstances may require. Applications of the kind, if well founded, are seldom or never refused ; but if a party elects to proceed, and take his chance of success, he cannot, if the verdict and judgment are against him, go into equity, and claimed to have the judgment enjoined. If a witness is too unwell to .testify understandingly, 'the proper remedy for the party is to move for a postponement of the trial.; and, if he elects to proceed and is unsuccessful, his only remedy is a motion for new trial to the court where the accident occurred.” See, also, Tallman v. Beecher, 85 Ill. 183.
So, too, where a party discovers that his witness is intoxicated, he should call the attention of the court to the fact, in order that there may be a postponement if necessary, and a failure fo do so will be such negligence that no new trial will be granted. Iseley v. Love joy, 8 Blackf. (Ind.) 462.
In Ainsworth v. Sessions, 1 Root (Conn.) 175, a new trial was granted, because the applicant’s witness became confused and unin- ' telligiblé on the trial.
Surprise not relieved if counsel was neglectful.], Unless a party has been diligent to ascertain before trial what his witness would swear to, he cannot have a new trial on the ground of surprise. Ruger v. Bungan, 10 Ind. 451, 452; O’Connor v. Duff, 30 Mo. 595, 599; Nelson v. Waters, 18 Ark. 574; Yanez v. State, 20 Texas, 656; Howell v. Howell, 37 Mo. 124, 128.
Nor unless he used diligence at the trial to cure the defect, if possible, by some other remedy. As, for example, by calling other witnesses to prove the same fact, and if not possible to call ,them at once, by applying for a continuance, in order to obtain their evidence, on a subsequent day. Beckford v. Chipman, 44 Ga. 543 (where the surprise arose from the testimony of a witness of the other side); Vandervoot v. Smith, 2 Cai. 155, 163; Klockenbaum v. Pierson, 22 Cal. 160, 163.
*473 «And in general, “a party claiming to have been injured, must show that the surprise has not resulted in any degree from his own fault or negligence, and must in addition claim his relief at the earliest opportunity. If he can relieve himself from embarrassment in any mode, either by a nonsuit or a continuance, or the introduction of other testimony or otherwise, he must not take the chances of a verdict, but must at once fortify bis position by resorting to all available modes of present relief.” Per Sanderson, J., in Schellhaus v. Ball, 29 Cal. 608.
But a party is not bound to place his attorney upon the witness stand in order to supply the desired testimony. Alger v. Merritt, 16 Iowa, 121, at 128, where the court says: “if a party is really taken by surprise, we would not deny him a new trial because of his failure to throw his attorney into the witness box to, if possible, save himself from the consequences of such surprise.” The ground assigned was the incompatibility of function of counsel and witness on the same trial.
In the following cases a new trial was granted where a party, without laches on his part, had been surprised at the testimony of his own witness. Todd v. State, 25 Ind. 212; Rodrigues v. Comstock, 24 Cal. 85; Delmas v. Margo, 25 Texas, 1; Wilson v. Brandon, 8 Ga. 136; McFarland v. Clark, 9 Dana, 136; Levy v. Brown, 6 Eng. 16; Dorr v. Watson, 28 Miss. 394.
Evidence first discovered at the trial.] The same general principle as to the diligence required of a party or his counsel, applies also in the case of evidence newly discovered at the trial.
Where either party discovers new evidence after he has rested his case at the trial, it is within the discretionary power of the court to permit him to introduce it. Mercer v. Sayre, 7 Johns. 306; Williams v. Allen, 40 Ind. 295; German Savings Bank v. Kerlin and Marks, 58 Mo. 382.
See also, Hook v. Stovall, 26 Qa. 704, where the court, at page 711, says it is the judge’s “ duty to admit evidence material to the issue, at any time before the argument before the jury is closed, provided the evidence was not within the knowledge of the party offering it until after the case was closed.”
. But this discretionary power will seldom be interfered with on appeal, except in case of a refusal because of a supposed lack of power to exercise it. Cozart v. Lisle, 1 Meigs (Tenn.) 65; Colton v. Jones, 37 Texas, 34, where it was held no error to refuse permission to introduce newly discovered evidence after both sides had rested, and the arguments had begun.
In Mercer v. Sayre, 7 Johns. 306, it was held that the lower *474 court, in excluding newly discovered evidence on the ground of lack of power, committed error, and as the evidence was material, it ought to have been admitted.
Inasmuch, therefore, as such evidence, newly discovered at the trial, may, in the discretion of the court, be introduced before the case goes to the jury, and as such evidence is not newly discovered after the trial, so as to form the ground for a new trial, it is the duty of counsel to aslc permission to introduce such evidence immediately upon its discovery at the trial; and any lack of diligence in that regard will preclude the grunting of a new trial. 1 Graham & Waterman on New Trials, p. 481; citing Higden v. Higden, 2 Marsh. (Ky.) 42; Dodge v. N. Y. & Washington Steamship Co., 6 Abb. Pr. N. S. 451; S. C., 37 How. Pr. 524; Base v. Asper, 6 Minn. 220, at 231.
See Thompson v. Clendening, 1 Head (Tenn.) 287 (for an instance in which the absence of the defendant at a time when he might reasonably expect that no new testimony would be admitted, was held not to be negligence on his part).
And in case the newly discovered evidence is not then available, it is the duty of counsel to ask for a postponement in order that it maybe subsequently produced. Beckford v. Chipman, 44 Ga. 543; Vandevoort v. Smith, 2 Caines (N. Y.) 155 at 163; Klockenbaum v. Pierson, 22 Cal. 160, at 163.
And in case of a refusal of the court to allow the evidence to be introduced, the question whether such refusal is a sufficient ground for a new trial, is to be tested by the same rules which would be applied in the decision of a motion for a new trial, on the ground of the discovery of the same evidence since the trial, if such was the fact. Dodge v. N. Y. & Washington Steamship Co., 6 Abb. Pr. N. S. 451 (above).