ALLEN vs. SEYFRIED, Administratrix.

EVIDENCE. *(1) Deposition: Effect of witness's reading interrogatories before examination. (2) Declarations as parts of res gestæ.*

1. A deposition should not be suppressed because the witness, before his examination, read the direct and cross interrogatories, though that may affect its weight.

2. In an action for the price of lumber alleged to have been sold and delivered by plaintiff to defendant's decedent, declarations of the latter during the process of delivery of the lumber to him, to the effect that he was satisfied that title to the lumber was not in plaintiff but in one W., and that he had paid W. for it (being offered in evidence by defendant), should have been admitted as part of the *res gestæ,* tending to define the character of the delivery.

APPEAL from the County Court of *Milwaukee* County.

This action was brought against Martin Seyfried, for the price of lumber alleged to have been sold and delivered to him by the plaintiff. Martin Seyfried having died pending the suit, it was revived against *Rosina Seyfried,* the administratrix of his estate.

The defense set up in the answer is, that the lumber in question was not the property of the plaintiff, but of Wilcox & Co.; that Wilcox & Co. delivered it to Martin Seyfried; and that the latter paid them for it.

Before the case was called for trial, defendant moved to suppress two depositions taken by plaintiff, on the ground that it appeared that the witnesses had been allowed to take and read the direct and cross interrogatories before they were propounded to them by the commissioners. The motion was denied.

One Ewing, a witness for the plaintiff, testified that he was a lumber broker, and did business for the plaintiff in 1874; that about the first of that month he sold to Martin Seyfried, on the vessel, a cargo of lumber received from plaintiff, and ordered the captain of the vessel to take it to Seyfried's dock,

and there deliver the lumber to him; that the captain took the vessel to Seyfried's dock in the forenoon of April 2, and there unloaded it; that witness, as plaintiff's agent, paid the captain $150 for freight, which plaintiff afterwards repaid him. On his cross examination, he said that he was not present when the lumber was put on board the vessel, and did not know of his personal knowledge where it came from, or who owned it; that he went to Mr. Seyfried's yard after dinner [apparently on the 2d of April], and saw the vessel at the dock, but found that the cargo was not being delivered; that he told Mr. Seyfried that he must proceed, and he answered that he could not; and that witness then learned that one Wilcox was interfering with the delivery of the lumber. Witness was then asked by defendant's counsel, whether he learned this from Mr. Seyfried, and whether the latter then stated that Wilcox claimed title to the lumber, and that he, Seyfried, could not accept a delivery from plaintiff; but these questions were ruled out. Defendant then offered to prove that Wilcox claimed title to the lumber, and that Seyfried refused to take it from plaintiff, but did receive it from Wilcox, and paid the latter for it, " and to prove this by the witness as part and parcel of the conversation which took place at the time of the actual delivery of the cargo from Seyfried's dock." The offer was rejected. The same witness was afterwards recalled by the defendant; the questions put to him on his cross examination were repeated, and again ruled out; and defendant offered to prove by him that, at the time of the delivery of the lumber, Seyfried stated that Wilcox claimed title to it, and that he, Seyfried, was satisfied that plaintiff had no title to the lumber, and that he had paid Wilcox for it; but the offer was rejected.

The defendant then put in evidence certain contracts entered into on the 22d of November, 1872, between the plaintiff and Wilcox & Co., by which the latter sold to the former a large quantity of real estate, including a saw mill in Muske-

gon, Michigan, etc., for $65,000, of which sum $55,000 was payable in five equal annual installments, commencing January 1, 1874; and by which plaintiff agreed to receive from Wilcox & Co., 55,000,000 feet of pine saw logs, in quantities of 11,000,000 feet per annum, beginning with the season of 1873; to saw the same for a price and in a manner specified, and to deliver to Wilcox & Co. the merchantable lumber made therefrom.

The court instructed the jury, in substance, that the question for them to determine was, whether, at the time of the sale and delivery of the lumber in question, it was owned by the plaintiff, or by Wilcox & Co.; that the possession of it by the captain of the vessel and Ewing, as plaintiff's agents, was *prima facie* evidence of title in plaintiff, and was conclusive evidence thereof for the purposes of this trial, unless overcome by evidence of actual ownership in another; that if the lumber was in possession of plaintiff's agent at the time of the agreement of sale with Seyfried, the presumption was that it remained in plaintiff's possession until delivered to Seyfried, unless the contrary was proved; that it was a question for the jury to find from the evidence, whether the lumber in question was manufactured from the logs of Wilcox & Co.; that if it was so manufactured under the contracts in evidence, plaintiff's shipment of it, without the consent of Wilcox & Co., could give no title to any person as against the latter; and that the burden was upon the plaintiff to show that he was the owner of the lumber, that Seyfried purchased it from him or his agent, and that he or his agent delivered it to Seyfried.

The instructions given in regard to the weight to be given to the depositions read in evidence, are stated in the opinion.

Verdict for the plaintiff, for the full amount claimed. A new trial being denied, defendant appealed from a judgment on the verdict.

For the appellant, a brief was filed by *Finches, Lynde & Miller,* and the cause was argued orally by *H. M. Finch.*

They contended, 1. That the depositions should have been suppressed, for the reason assigned in the motion therefor. 2. That the court erred in rejecting evidence of Seyfried's declarations at the time of the delivery of the lumber, the same being admissible as part of the *res gestæ*. *Stone v. Bird*, 16 Kans., 490; *Beaver v. Taylor*, 1 Wall., 642; *Sessions v. Little*, 9 N. H., 271; *Wetmore v. Mell*, 1 Ohio St., 26; *Bank of Woodstock v. Clark*, 25 Vt., 310; *Haynes v. Rutter*, 24 Pick., 245; *Allen v. Duncan*, 11 id., 309; *Wood v. Foster*, 8 Allen, 24; *Yarbrough v. Arnold*, 20 Ark., 592; and especially *Ræbke v. Andrews*, 26 Wis., 316, and cases there cited.

For the respondent, a brief was filed, signed by *H. H. & G. C. Markham* as attorneys, with *Frank B. Van Valkenburgh*, of counsel; and the cause was argued orally by *Mr. Van Valkenburgh*. They contended, among other things, that there is no rule of evidence which allows the purchaser of personal property, while in the very act of taking the possession thereof, and so the *prima facie* evidence of title thereto, from his vendor, to deny his vendor's title and make title in himself, by asserting that he has heard a third party say that he owned it, and has thereupon paid such third party for it; that *Ræbke v. Andrews*, 26 Wis., 316, was not such a case, but merely decides that the statements of a party *in possession* may be shown to explain the character of his possession, but are not evidence of title; and that the fact that Wilcox claimed to own the property when he was not in possession, could not avail the defendant, who had already purchased it from the plaintiff. *Persons v. Burdick*, 6 Wis., 63.

COLE, J. I. The motion to suppress the depositions was founded principally on the objection that it appeared that the witnesses had been allowed to take and read the direct and cross interrogatories before they were examined by the commissioners. The witness Becker says, in answer to cross interrogatories: " I read the direct and cross interrogatories, here,

to-day, before the examination began." The witness Glaser says: " I read the direct and cross interrogatories, here, to-day, and several days ago." Now, it is said that this shows such a fraudulent or improper execution of the commission as to warrant the court in suppressing the depositions. The practice of allowing a witness to read or know, previous to examination, what questions will be asked him, is doubtless liable to abuse, and may sometimes almost destroy the value of a cross examination. A hostile or dishonest witness, knowing in advance what questions were to be asked, would be put upon his guard, and might so prepare his answers as to suppress the truth, conceal his bias, or avoid self-contradiction. This is all very evident. But, still, it is absolutely necessary, in certain cases where a witness is to be examined in reference to a transaction which was the subject of correspondence, or which involved numerous items or dates, that he should be informed beforehand of the nature and scope of the questions he will be called upon to answer, in order that he may be prepared for the examination. For it is obvious that, without some previous preparation to refresh his memory in such cases, his testimony would be nearly or quite valueless. We think, therefore, to lay down a rule that it is a sufficient ground for suppressing a deposition, if it appear that the witness was allowed to read and examine the direct and cross interrogatories before he gave his evidence, would be inconvenient and dangerous as a rule of practice. On this point the court below instructed the jury, that permitting a witness to read the direct and cross interrogatories before giving his testimony tended to defeat the entire purpose of a cross examination, by enabling a witness to think out and prepare in advance his answers; and that a deposition taken under such circumstances was not entitled to the same weight as a deposition taken where the witness had not studied the interrogatories in advance of giving his testimony. According to this instruction, previous knowledge of the questions which the witness was

required to answer, affected the credibility of his testimony, but did not constitute a sufficient reason for suppressing it entirely. This rule we regard as the better one on the subject, and therefore think there was no error in refusing to suppress the depositions for the reasons assigned.

II. Another error assigned is the refusal of the court to permit the witness Ewing to answer the questions calling for the declarations or statements of Seyfried, deceased, made at the time of the delivery of the lumber in controversy. The questions were first asked on the cross examination, but afterwards the witness was called on the part of the defendant, and the questions repeated, with the further offer to prove that Seyfried stated, at the time of the delivery of the lumber, that Mr. Wilcox claimed the title to it, and that he was satisfied the plaintiff had no title to it, and that he had paid Wilcox for it. It was insisted by the counsel for the defendant, that all that was said at the time of the sale and delivery of the lumber, was part of the *res gestæ*, and was competent testimony. This position, we think, is correct. The action is to recover the value of a cargo of lumber alleged to have been sold and delivered by the plaintiff, through his agent, Ewing, to the deceased, Seyfried. The lumber was shipped from the plaintiff's dock at Muskegon, on a vessel, and transported to Milwaukee. Ewing was a lumber broker, living at Milwaukee and doing business for the plaintiff. He sold the lumber while on the vessel, to Seyfried, as the property of the plaintiff. Ewing ordered the captain to take the vessel to Seyfried's dock, and deliver the lumber. The vessel was taken to Seyfried's dock, and, as the lumber was about to be delivered, one Wilcox interfered and stopped the delivery. Ewing testified that he saw Wilcox, and then went to Seyfried's yard, and told Seyfried that he must proceed with the unloading of the vessel, when Seyfried replied that he could not. And it was the declarations and statements made by Seyfried at this time which were offered in evidence and ruled out. It will be observed that

420    SUPREME COURT OF WISCONSIN,

Germantown Farmers' Mutual Ins. Co. vs. Dhein, imp.

when these declarations were made, Seyfried was in the very act of receiving the lumber; the contract of sale and delivery was not complete. Whatever was said by the parties, at the time, was directly connected with the fact under investigation, and was admissible as a part of the *res gestæ*. Upon this point the law is clear and well settled. Counsel on both sides have cited many cases more or less bearing on the question; but we do not deem it necessary to go over them. For the principle is elementary, that the acts and declarations of the parties, done and made at the time of the transaction which is being inquired into, and connected with it, constitute parts of the *res gestæ*. There is a very exhaustive discussion of the question in *Rœbke v. Andrews*, 26 Wis., 313, where numerous cases are examined. See also *Eastman v. Bennett*, 6 id., 232; *Bates v. Ableman*, 13 id., 644: *Wilcox v. Bates*, 26 id., 465; *Resch v. Senn*, 28 id., 286; *Milne v. Leisler*, 7 H. & N., 786. What weight should be given these declarations of Seyfried as bearing upon the question of the ownership of the lumber, was a matter for the jury. But they were competent testimony, and their exclusion was error.

*By the Court.*—The judgment of the county court is reversed, and a new trial ordered.