**HAMDI & IBRAHIM MANGO CO., Limited, Plaintiff,**

v.

**FIRE ASSOCIATION OF PHILA-DELPHIA, Defendant.**

United States District Court
S. D. New York.

March 27, 1957.

Kirlin, Campbell & Keating, New York City, Edward L. Smith, James Proud, of counsel, for plaintiff.

Bigham, Englar, Jones & Houston, New York City, Vincent L. Leibell, Jr.,

New York City, of counsel, for defendant.

FREDERICK van PELT BRYAN, District Judge.

Defendant moves to suppress the deposition of a witness taken, on behalf of plaintiff, before the American Vice Consul in Beirut, Lebanon, upon written interrogatories, pursuant to Rule 31, Fed. Rules Civ.Proc. 28 U.S.C.A.

Defendant contends that the deposition should be suppressed upon two grounds:

1. That the secretary of the plaintiff corporation gave the witness, A. M. French, a copy of the interrogatories to be asked on direct examination the day before the deposition was to be taken and the witness read the interrogatories before being examined.

2. That while French was testifying before the Vice Consul he referred from time to time to a copy of his deposition in another case to aid him in answering the cross-interrogatories propounded.

Plaintiff is suing to recover from defendant underwriter, losses, chiefly from theft, of shipments of some 57 automobiles and a number of cases of parts from various American ports to plaintiffs in Amman, Transjordan, during the year 1948. The witness French was employed by Steel Brothers & Co., Ltd., which had been retained by the Government and merchants in Transjordan to secure the clearance and transshipment of goods consigned to Amman and then in the Port of Haifa, or expected to arrive there. Plaintiff was one of the merchants who had requested such assistance.

The interrogatories propounded to the witness French concerned rather complicated transactions occurring in the Near East more than seven years ago and referred to numerous documents relating to such transactions. The direct interrogatories were some 35 in number with numerous sub-headings, and there were some 119 cross-interrogatories.

In response to one of the cross-interrogatories French testified that the secretary of the plaintiff corporation had called on him the day before the examination was to take place, asked for his cooperation in answering interrogatories, and left with him various files and papers concerning the litigation, including copies of the interrogatories which he would have to answer. It appeared that he had read these interrogatories before being examined.

The Vice Consul who took the examination noted at the conclusion of the cross-interrogatories that in answering them the witness had referred from time to time to a deposition made by him in connection with other litigation between plaintiff and another insurance company.

Defendant asserts that these facts furnish grounds for the suppression of the deposition.[1] I do not agree.

█ If the deposition of this witness had been taken upon oral examination, pursuant to Rule 30, F.R.C.P., instead of upon written interrogatories pursuant to Rule 31, it could scarcely be suggested that it would be improper for counsel who called the witness to review with him prior to the deposition the testimony to be elicited. It is usual and legitimate practice for ethical and diligent counsel to confer with a witness whom he is about to call prior to his giving testimony, whether the testimony is to be given on deposition or at trial. Wigmore recognizes "the absolute necessity of such a conference for legitimate purposes" as part of intelligent and thor-

---

1. Defendant cites no authority for such a drastic remedy, but relies on a statement in 4 Moore, Federal Practice, p. 2153 (2d Edition) to the effect that it is considered improper practice for the attorney upon whom written interrogatories are served, or the party taking the deposition, to show the interrogatories to the prospective deponent in advance of the taking of the deposition.

ough preparation for trial. 3 Wigmore on Evidence, (3d Edition) § 788.

In such a preliminary conference counsel will usually, in more or less general terms, ask the witness the same questions as he expects to put to him on the stand. He will also, particularly in a case involving complicated transactions and numerous documents, review with the witness the pertinent documents, both for the purpose of refreshing the witness' recollection and to familiarize him with those which are expected to be offered in evidence. This sort of preparation is essential to the proper presentation of a case and to avoid surprise.

There is no doubt that these practices are often abused. The line is not easily drawn between proper review of the facts and refreshment of the recollection of a witness and putting words in the mouth of the witness or ideas in his mind. The line must depend in large measure, as do so many other matters of practice, on the ethics of counsel.

As Wigmore says, 3 Wigmore on Evidence, 3d Ed., § 788:

"* * * This right may be abused, and often is; but to prevent the abuse by any definite rule seems impracticable.

"It would seem, therefore, that nothing short of an actual fraudulent conference for concoction of testimony could properly be taken notice of; there is no specific rule of behavior capable of being substituted for the proof of such facts."

Some protection is afforded to a party against such abuses by permitting him to question the witness on cross-examination about prior conversations with counsel, and thus, if he can, to reflect on the credibility of the witness and the weight to be given to his testimony. The defendant in the instant case was able to bring out by his cross-interrogatories the fact that French had gone over the questions beforehand. Defendant is thus in a position to argue questions of credibility and weight of testimony on the trial, for what such argument may be worth. But any rule that a deposition is to be suppressed merely because counsel had reviewed the questions with his witness beforehand, or had given the witness copies of direct interrogatories, would be most unfair and cannot be justified.

As far as I am aware no court has laid down such a rule and there are several cases to the contrary. For example, in Commercial Bank of Pennsylvania v. Union Bank of New York, 11 N.Y. 203, the Court of Appeals refused to suppress a deposition taken upon interrogatories, even though counsel "conversed with the witnesses prior to their examination, and at their request wrote down for them the substance of the facts in answer to the several interrogatories." To similar effect are Gersten v. Schroder Trust Co., 261 App.Div. 934, 25 N.Y.S.2d 461; Moore v. Robertson, 62 Hun 623, 17 N.Y.S. 554; Fant v. Miller, 17 Grat., Va., 187, 223; Allen v. Seyfried, 43 Wis. 414, 418.

In Allen v. Seyfried, where a motion to suppress depositions upon the ground that the witnesses had read the direct and cross-interrogatories before they were examined by the Commissioners was denied, the Court said, 43 Wis. 418:

"* * * Now, it is said that this shows such a fraudulent or improper execution of the commission as to warrant the court in suppressing the depositions. The practice of allowing a witness to read or know, previous to examination, what questions will be asked him, is doubtless liable to abuse, and may sometimes almost destroy the value of a cross examination. A hostile or dishonest witness, knowing in advance what questions were to be asked, would be put upon his guard, and might so prepare his answers as to suppress the truth, conceal his bias, or avoid

self-contradiction. This is all very evident. But, still, it is absolutely necessary, in certain cases where a witness is to be examined in reference to a transaction which was the subject of correspondence, or which involved numerous items or dates, that he should be informed beforehand of the nature and scope of the questions he will be called upon to answer, in order that he may be prepared for the examination. For it is obvious that, without some previous preparation to refresh his memory in such cases, his testimony would be nearly or quite valueless. We think, therefore, to lay down a rule that it is a sufficient ground for suppressing a deposition, if it appear that the witness was allowed to read and examine the direct and cross interrogatories before he gave his evidence, would be inconvenient and dangerous as a rule of practice. * * * "

With this I fully agree.

■■■ The second ground for suppression—that the witness referred to a copy of his deposition in another case during the examination—is also without merit.

During the course of a deposition taken on oral questions and answers a witness is permitted to refresh his recollection, if he so requests, by looking at a copy of his testimony in a prior litigation. Counsel would be expected to see to it that he had reviewed his prior testimony before examination in any event. In the course of examinations taken on written interrogatories there is little opportunity for the give and take which occurs at depositions taken on oral questions. But there seems to be no reason why a witness should not be permitted to bring material before the Commissioner from which to refresh his recollection if need be. The fact that he has found it necessary to refresh his recollection may have some effect on the weight to be given to his testimony.

Here the Commissioner properly made a note showing that the witness had refreshed his recollection from time to time by reference to his prior testimony so that the rights of the defendant to argue questions of weight and credibility are fully preserved for the trial.

What the defendant really claims here is that different rules should be applied to a deposition taken on written interrogatories than to a deposition taken on oral questions or to testimony at a trial, and that a witness testifying on the former should be held to a much stricter standard of conduct than a witness testifying on the latter. I see no grounds for such a distinction.

The motion to suppress is denied.

