## THE TOWN OF BARNARD *v.* GILMAN HENRY.

*Review.   Agent, when his declarations are admissible.   Hearsay, &c.*

In a suit against an officer, for not collecting and returning an execution, where the plaintiff produced a receipt which appeared to have been given at the time of the delivery of said execution, *it was held* that the case came within the statute, and that no review was allowable.   Comp. Stat. Chap. 28,§ 17, Exception 4.

Where the defendant offered to prove, 1st, That the town agent agreed, at different times, to control the execution; 2d, that said agent admitted at different times, and to different persons, that he had controlled it; and this testimony was offered in connexion with proof, that the defendant having obtained security of one of the debtors on said execution, gave it up to him; *it was held* that this proof had no legal tendency to prove the issue, nor was it competent legal proof of the fact, that said agent did control said execution.

Barnard *v.* Henry.

The declarations of an agent are only admissible when made in the transaction of the business of the principal, and thus become the principal's, and bind him.

And where the agent was not offered by the plaintiffs, to prove that he did not control the execution, but upon that point the agent was made a witness by the defendant ; *it was held,* that the defendant having made the agent his own witness upon this point, it would not be competent for him to offer testimony to prove that the agent had made declarations out of court, inconsistent with his testimony upon this point.

THIS was an action on the CASE, against the defendant, as Sheriff of the county of Windsor, for neglect, in not collecting and returning an execution in favor of the plaintiffs, against Joseph B. Danforth, and others. Plea, the general issue, and trial by jury.

On the trial, the judgment against said Danforth and others was conceded, and also the issuing of an *alias* execution, on said judgment, November 15, 1849. The plaintiffs produced, and read in evidence, a receipt of the defendant, for said *alias* execution, and also offered one Hiram Aiken, who testified that he was town agent of said town of Barnard, from March 1849, to March 1850, and as such agent, sued out this execution, and directed its collection. That the debtors were not considered good for anything after the 24th day of May, 1850, and have so remained ever since, though they had attachable property sufficient to satisfy this execution, until February, 1850.

On the cross examination, said Aiken testified that a few days after said execution had run out, in the hands of the defendant, the defendant called at his house on his way to Stockbridge, as defendant said. That defendant went out and was gone from fifteen to thirty minutes, and came back, took his horse and went on. That soon after this, and on the same day, he saw said Danforth pass his house, going towards the house of Daniel Aiken, (brother of witness.) That said Danforth soon came to witness, and asked witness, if he, witness, could have the pay on said execution, the next week, if it would answer, and that he, witness, told him it would. That said Danforth then asked witness, if he, witness, would not so inform the defendant on his return from Stockbridge, and witness replied he would. That on the return of the defendant the same day, witness told defendant what had passed between him and said Danforth, and that it would answer if the money was paid in the course of the next week.

In answer to a question by defendant's counsel, the witness said, that he could not say that he did, or did not, tell the defendant to let said execution lie and do nothing further with it; and that he had no recollection of afterwards telling said Danforth Davis, or Daniel Aiken, that he directed the defendant to let said execution lie and do nothing further with it, or that he controlled said execution in the hands of the defendant.

The defendant offered the deposition of the said Danforth, who testified among other things, to what the said Hiram Aiken said about controlling said execution, &c.; to which plaintiffs objected, and the court excluded that part, to which defendant excepted. The defendant also offered to show by the testimony of the said Daniel Aiken, that on the day the defendant went to Stockbridge, as before stated, said Danforth called on him and agreed with him to see said Hiram Aiken, and get him to control the said execution in the hands of defendant. That there had been some arrangement between said Danforth and said Daniel, by which said Daniel expected to pay a part or the whole of said execution. That said Daniel did, on the same day, call on the said Hiram, and agree with said Hiram to control said execution, and that said Hiram at the same time told the said Daniel that he had agreed with said Danforth to control said execution.

This testimony was objected to by plaintiffs, and excluded by the court, to which defendant excepted.

Defendant also offered to show, by the testimony of Danforth Davis, that said Hiram told said Davis that the town had lost said execution, as he said Hiram had controlled it in the hands of the defendant. This testimony plaintiffs objected to, and it was excluded by the court, to which defendant excepted.

The jury returned a verdict for plaintiffs. Judgment rendered thereon.

The defendant, thereupon, prayed leave of the court to enter a review of said cause to the next term of said court, and offered good and sufficient bail. The court refused to grant the leave asked.

Exceptions by defendant.

*Tracy, Converse & Barrett* for defendant.

I. Review should have been allowed. Comp. Stat. 221, § 17.

To refuse a review, the court must find that the case comes clearly within the exceptions in the statute ; where there is any *doubt*, review should be allowed.

The declaration and record should show that the case is within the exception, else a review should be allowed.

No proof *aliunde* should be allowed to defeat a review, unless the facts are stated, and insisted on, in the declaration.

Review was allowed, on a bond of deputy jailer to the sheriff. *Paige* v. *Barney et al.*, Bray. 23.

II. The testimony of Danforth, Daniel Aiken, and Davis, was improperly rejected, because they show what the agent *said about the matter while he continued to be agent, retaining all his authority touching this matter as such agent.*  And this, it is insisted is admissible, although it does not accompany *the act of controlling* the execution.  *Barney* v. *Fayles*, 1 Pet. 311.   *Curtis* v. *Ingham*, 2 Vt. 287.   *Mott* v. *Kip*, 10 Johns. 478.   *Lyman* v. *Lull*, 20 Vt. 349.   *Greenwood* v. *Curtis*, 6 Mass. 358, and dissenting opinion of SEDGWICK.

III. We insist it was admissible for the purpose of *discrediting* the witness.  If the enquiries put to the agent with a view of contradicting him, were legitimate *cross examination*, then surely we were entitled to the testimony, as it tended to impeach either his recollection or his integrity.

What is a cross examination ?

Any inquiry put to a witness introduced and examined by the opposite party, which is pertinent to the issue on trial, is a *cross examination*.  1 Greenl. Ev. 527 § 449.  *Spencely* v. *Willott*, 7 East. 108.   *Ware* v. *Ware*, 8 Greenl. 42, 1 Starkie Ev. 133, § 22. *Harris* v. *Wilson*, 7 Wend. 57.

The party only makes the witness his own, and is bound by his answers, when he puts inquiries on cross examination, wholly *collateral* or *irrelevant* to the issue.  *Harris* v. *Tippets*, 2 Camp. 637, and cases before cited.

*Washburn & Marsh* for plaintiffs.

I. The testimony of Danforth, Daniel Aiken and Davis, was inadmissible, as tending only to prove that the execution was controlled by the *town agent*, without the concurrence of the town, or of any other of its officers.

It was *hearsay*, for the reason that Hiram Aiken was a competent witness for defendant, and was called by him. It was inadmissible as the declaration of an agent,—for it was mere *narrative*.

II. The testimony was also inadmissible, as tending only to prove a direction by the town agent to the defendant to stay the collection of the execution, *after the execution had expired*, and of course, *after a cause of action against the defendant, for his neglect, had accrued to the town*,—and this, *without consideration*. *Smalley* v. *Hickok*, 12 Vt. 163. *Pomeroy* v. *Slade*, 16 Vt. 220. *Bates* v. *Starr*, 2 Vt. 536.

III. The *right of review* was properly denied. The exceptions show, that defendant, as sheriff, executed a receipt in writing, for the *alias* execution delivered to him ; the neglect to execute and return which, constitutes the subject matter of this suit, and the statute is express, that, in such case, no review shall be allowed. Rev. Stat. 160, § 9, p. 4.

The opinion of the court was delivered by

REDFIELD, Ch. J. I. In regard to the propriety of allowing a review in this case, the words of the statute Chap. 28, § 17, exception 4, seem to be very explicit. No review is to be allowed, in any suit brought against a sheriff, &c., for not executing, or duly returning a writ of execution—when a receipt was given by such officer, at the time of delivery thereof. The receipt is produced, and seems to have been given at the time. Indeed, that portion of the statute, in regard to time, seems to apply chiefly to a case where a receipt is demanded and not given. There is nothing in the statute requiring the action to be, in terms, founded upon the receipt. That is so in regard to a suit brought by an officer, for goods attached, and receipted to him. But nothing of the kind is found in this exception. This suit is brought in terms, for not executing, or duly returning the execution.

II. In regard to the testimony offered upon the trial, by defendant, and rejected, although coming from different witnesses, it all seems to amount to the same thing. 1. That the town agent, Hiram Aiken, agreed at different times to control the execution, and look to Daniel Aiken for payment. 2. That he admitted at different times, and to different persons, that he had controlled it.

This is offered in connexion with proof, that the defendant having obtained security of one of the debtors on said execution, gave it up to him. All this, no doubt, tends very strongly to convince the mind morally, that the defendant supposed he was exonerated, and so does the mere fact, that the defendant gave up the securities, but that does not help the case. The question recurs: Is this competent legal proof of that fact? Does it have any legal tendency to prove the issue, that the agent did in fact make such a contract?

We think it does not. There always will be upon this subject, as upon all others, extreme cases, which if followed, would break down the principle of the rule, upon which they profess to go. But extremes prove nothing as to the rule. The principle must be maintained. The cases upon this subject, many of them the same cited in the present argument, are commented upon somewhat, in the opinion of the court, in *Underwood* v. *Hart*, 23 Vt. 120.

The only principle upon which the declarations of an agent are ever admissible, is that, being made in the transaction of the business of the principal, they thus become his, and bind him. Very obviously, the agreement of the agent to control the execution, being merely executory, and upon no consideration, is not a binding contract upon the town, and has no legal tendency to show that he did, in fact, control it. That is altogether a *non sequitur.*

So too, his mere naked declaration, that he had controlled the execution. This is no act within the scope of his agency. It is nothing binding upon the town, unless he did in fact make a binding contract to that effect. And we are as far from that as ever.

The force of the declaration, as tending to prove the desired fact of control, depends, not upon the authority of the agent, but upon his veracity ; and as such, is a mere medium of proof, is hearsay, and nothing else.

It was urged, that these declarations of the agent were admissible, to show that the witness had made declarations out of court, not consistent with his testimony. But Hiram Aiken was not offered by the plaintiffs to prove that he did control the execution. If he had been, and had so testified, this testimony would no doubt have been competent to contradict him. But upon this point he was made a witness by the defendant, not by way of cross exami-

nation, in regard to matters he had testified to, on the part of the plaintiffs, but upon a new and independent matter altogether. It would not therefore come fairly within the rule of impeaching an adversary witness, by showing that he had made different declarations out of court.

It is noticeable too, in this case, that the witness testified to nothing, just nothing upon this point, so that his declarations offered by defendant were not needed to contradict the testimony of the agent, but to extend and eke it out.

We do not find it necessary to pass upon the question, how far a town agent has authority to control an execution, after the sheriff is fixed with a liability for not collecting it.

Judgment affirmed.