## GEORGE COX v. G. N. EAYRES AND ROBERT HEWITT.*

### Evidence.

1. A party cannot impeach his own witness ; and *it is not in the discretion of the court* to allow him to do so, either by general evidence, or by proof by other witnesses of prior contradictory stat⸱m⸱nts.
2. Proof that a witness was drunk at the time of the event to which he testifies may be introduced to discredit him.
3. When a deposition was excluded on the ground that the witness was in court, and the witness was then called. and on cross-examination testified that the p'aintiff about the time of the taking of the deposition had given him a pair of shoes, and intoxicating liquor, it was *held* that the plaintiff could *repel the imputation cast upon him*, but that he could not show that the witness had made prior contradictory statements.

CASE, with a count in trespass.  Plea, general issue with notice of special matter.  Trial by jury, September Term, 1881.  Verdict for the plaintiff to recover $221.66.  The defendant Eayres, was superintendent, and Hewitt, deputy superintendent and jailor, in the House of Correction.  The count in case alleged that the defendants by their servants and agents so negligently and carelessly cut and shaved off the plaintiff's beard that he was thereby made sick, &c. ;  the count in trespass alleged that the plaintiff was confined as a prisoner in said house of correction, and that defendants wilfully and maliciously, with force, &c., caused his beard to be cut and shaved off, &c.  One W. H. Davis, Jr.; was the colored barber who shaved off the plaintiff's beard and whiskers.  The plaintiff offered in evidence Davis' deposition.  The defendants objected to it on the ground that the witness was in court, and it was excluded.  The plaintiff thereupon called the witness ;  and his testimony tended to sustain the claims of the defendant as to the removal of the beard, and as to what was said between the plaintiff and Hewitt.  On cross-examination the witness stated that the plaintiff had bought him a pair of shoes, and treated him with intoxicating liquor many times, a little while

---

* Heard at the January Term, 1882.

before the taking of the deposition, and that if his deposition had been taken he did not remember it. The plaintiff denied that he furnished the witness liquor, and that he bought him any shoes ; and his counsel claimed that they were surprised by the testimony, and charged that he had been under the influence of the defendants and their friends, and had been corrupted since he gave his deposition.

The plaintiff then called the notary who took and wrote the deposition of Davis, and asked him what Davis said to him when giving his deposition, as to using shears in removing Mr. Cox's beard. To this question the defendants objected, as being an attempt to impeach the plaintiff's own witness by showing he had made different statements out of court, and as calling for facts contained in a deposition over the signature of Davis. The plaintiff's counsel thereupon again offered to put in said deposition, but to this the defendants objected.

At this point and previously the counsel upon both sides in arguing the question as to the admissibility of the impeaching testimony, indulged in charges of gross unprofessional misconduct against opposing counsel respectively and of the greatest impropriety by the parties respectively in respect to their conduct with and towards the witness and the taking of his deposition.

The court thereupon said that in view of the unusual charges and what had appeared in respect to this witness, they should admit evidence tending to show what the witness then said, and what his condition was when he said it; and should do this in the exercise of discretion so far as it was a matter of discretion under the anomalous circumstances. The court thereupon overruled the said objection and admitted the question and evidence, to which the defendants excepted.

The counsel for the plaintiff then put to the notary the following question :

What did Davis say relative to Mr. Cox asking Mr. Hewitt to wait or delay the shaving ? You may refer to the deposition as a memorandum.

The defendants objected to this question for same reasons as before, and also to the deposition being used to refresh the memory

of the witness so he could swear to its contents. The court permitted the witness to examine the deposition and to answer the question, explaining that he could look at it for the purpose of refreshing his memory. The witness answered from the deposition or with it before him, as follows: "Mr. Cox says, cannot you wait till morning"? He said this to Hewitt and Mr. Hewitt says, "*No*, it is against the orders." To which question, testimony and ruling the defendants excepted.

The other facts are stated in the opinion.

*J. C. Baker* and *A. F. Walker*, for defendants. ·

The plaintiff called this witness to testify in his own behalf, and selected him voluntarily for that service. By calling the witness the plaintiff endorses him as being worthy of credit, and he cannot afterwards attack his veracity. Such a course would be bad faith to the court, to the jury and to the other party, and would enable the party to make a good witness for himself, if he testified in his favor, and at the same time hold the means to destroy him if he spoke against him. *Johnson* v. *Varick*, 7 Cow. 238; *Olmstead* v. *Bank*, 32 Conn. 278; *Whitaker* v. *Salsbury*, 15 Pick. 534; *Commonwealth* v. *Starkweather*, 10 Cush. 59; *Elliot* v. *Pearl*, 10 Pet. 431; *Adams* v. *Wheeler*, 97 Mass. 67; *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt. 122; *Downer* v. *Dana*, 19 Vt. 338.

*Redington & Butler* and *E. J. Ormsbee*, for plaintiff. .

The plaintiff, to clear himself of the untrue charges of the witness, Davis, made upon cross-examination, as well as to show how the witness had imposed upon him, as well as the court, by previously, under oath, stating differently from what he then testified, and to further show that Davis fully understood what he was doing and saying when he made his statement under oath, introduced the notary, before whom he made the statements, and also other witnesses.

The court fully realized the situation, and as a matter of *discretion*, allowed the plaintiff privilege. This was clearly a matter of discretion. *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt. 148; 1 Greenl. Ev. s. 436–442, n. 443, 444, n.; *Moody* v.

*Rowell*, 17 Pick. 498 ; *Wright* v. *Beckett*, 1 M. & Rob. 414 ; *Rice* v. *N. E. M. Ins. Co.* 4 Pick. 439 ; *Brown* v. *Bellows*, 4 Pick. 179 ; 2 Phil. Ev. 447-450-463 ; 50 Vt. 142.

Of this character was all the testimony of the witnesses on the part of plaintiff, as affecting testimony of Davis.

The question asked of the notary was to the same effect. And he had a right to refer to the deposition which was in his own hand-writing as a memorandum to refresh his memory. 16 Vt. 113 ; 35 Vt. 195 ; *Commonwealth* v. *Goddard*, 14 Gray, 402 ; 12 Cush. 98 ; 42 Vt. 206 ; 36 Vt. 652.

The opinion of the court was delivered by

Rowell, J. The first question is, Was it competent for the plaintiff to discredit his own witness, Davis, by showing by other witnesses that he had previously made statements in conflict with his testimony at the trial? This evidence was admitted as matter of discretion, as far as it was such matter, in view of the "anomalous circumstances" of the case ; and if admissible on that ground, its admission cannot be assigned for error. There has long been a conflict in the authorities on this subject ; but we think that a careful examination of the cases will show that it is a well-settled general rule of the common law, not subject to be controlled by the discretion of the court, that a party cannot impeach his own witness, either by general evidence, or by proof by other witnesses of prior contradictory statements.

It seems to be pretty generally conceded that a party cannot impeach his own witness by *general* evidence of his bad character for truth ; and the reasons given for the rule are, that by offering a witness in proof of his case, a party thereby represents him as worthy of belief, and that thereafter to attack his general character for truth, would be not only bad faith towards the court, but in the language of Buller, "would enable the party to destroy the witness if he spoke against him, and to make him a good witness if he speaks for him, with the means in his hands of destroying his credit if he speaks against him." Buller N. P. 297 ; Best Ev. s. 645 ; 1 Whart. Ev. s. 549 ; 1 Greenl. Ev. s. 442. What-

ever may be said of the reasons of the rule—and they are assailed by Mr. Phillips and by a learned writer in 11 Am. Law Rev. 261—. the rule itself is well established.    It is also well settled that a party is not bound by the testimony of his own witness, but is at liberty to show that facts relevant to the issue are otherwise than he has stated them to be, although the effect of such showing may be to discredit the witness.  Best Ev. s. 645 ; 1 Whart. Ev. s. 549.

But whether a party could show that his own witness had made statements out of court inconsistent with his testimony in court, Mr. Best says was an  unsettled point in England before the passage of  the Common-Law  Procedure   Act of 1854, with the weight of authority in the negative.   An examination of the cases will show  that there is not much authority in favor of the affirmative.    An early case, and perhaps the earliest, on the subject, is *Adams* v. *Arnold*,  Holt, 299, which was trespass for an assault, wherein HOLT, C. J., " would not suffer the plaintiff to discredit a witness of his own calling, he having testified against him." In the trial of Warren Hastings, Lord THURLOW refused to allow the prosecution to show that portions of the contents of a paper that they had introduced were not true,—a ruling at which Mr. Burke is said to have expressed his contempt with great emphasis. In that case also the Judges, in answer to a question submitted to them by the Lords, said that " where a witness, produced and examined in a critical proceeding by a prosecutor, disclaims all knowledge of any matter so interrogated, it is not competent for such prosecutor to pursue such examination by proposing a ques· tion containing the· particulars of an answer supposed to have been made by such witness in another place, and by demanding of him whether the particulars so suggested were not the answers he had so made."   This case, however, goes farther in this behalf than most of the recent cases, and farther than we think the rule as now established will warrant, as will be shown hereafter.  *Rex* v. *Oldroyd*, Russ. & Ry. 88, is much relied on in support of the affirmative of this question.   But the point was not involved in the case, which was this : the prisoner was tried before Mr. Baron Graham for the murder of his father.    Counsel for the prosecution, at the close of their case, observed to the Judge that they

did not mean to call the prisoner's mother, strong suspicions having fallen on her as having been an accomplice ; but the Judge thought it right, in compliance with the usual practice, her name being on the back of the indictment as having been examined before the grand jury, to have her examined, which was accordingly done. The Judge observing that the testimony given by her was in favor of the prisoner, and materially different from her deposition before the coroner, thought it proper to have the deposition read, for the purpose of affecting the credit of her testimony given at the trial. The question reserved for the opinion of the Judges was, whether it was competent to *the Judge*, under the circumstances stated, to order the deposition to be read in order to impeach the credit of the witness ; and " the determination of the Judges was confined to the right of *a judge* to call for a witness' deposition in order to impeach the credit of a witness who should at the trial contradict what she had before deposed ; but Lord ELLENBOROUGH and MANSFIELD, C. J., thought the prosecution had the same right."

In *Ewer* v. *Ambrose*, 3 B. & C. 746, the question was whether the promises declared on were made by the defendant jointly with John and Samuel Baker, or only with John Baker. Defendants called Samuel Baker, to show that the promises were made by the three ; but he denied that he ever was a partner, whereupon defendant's counsel, in order to prove that he was a partner, offered to read in evidence an answer in chancery of John and Samuel Baker to a bill filed against them by the defendant for a dissolution of the partnership. GASELEE, J., inclined to think that the evidence was not admissible, for that it was produced in order to contradict the defendant's own witness, but admitted it, reserving liberty, &c. By the answer it appeared that Samuel was a partner. The Judges all agreed that the answer was improperly admitted, as it was received as substantive evidence of the fact of a partnership. BAILEY, J., thought that the defendant ought not to have been permitted thus to contradict his own witness. HOLROYD, J., doubted whether the answer was admissible at all, and said it certainly was not admissible to prove generally that the witness was not worthy of credit, but that it might, per-

haps, be admissible if the effect of it was only to show that as to the particular fact sworn to at the trial, the witness was mistaken. LITTLEDALE, J., said it was not necessary to decide the question, but thought it doubtful whether the answer could be received to prove a different state of facts from what the witness had sworn to at the trial.

*Wright* v. *Beckett*, 1 M. & Rob. 414, was trespass *qua. clau.* before Lord DENMAN, C. J. The question was, whether the plaintiff had the exclusive right to a piece of marshy land. Plaintiff called a witness whose testimony was adverse to him, and who gave an evasive answer to a question touching prior contradictory statements, whereupon plaintiff's counsel were permitted to show by plaintiff's attorney that the witness had given a different account to him. Afterwards the case was argued before DENMAN C. J., and BOLLAND B., in Sergeant's Inn, and the learned Judges differing in opinion, gave separate judgments. Lord DENMAN favored the admission of the evidence. BOLLAND, B., was against it. He said he did not consider *Rex* v. *Oldroyd* authority on the question ; that all that could be claimed for it was what ELLENBOROUGH and MANSFIELD said, namely, that they thought the prosecutor had the same right ; that all doubt on this point was set at rest by *Ewer* v. *Ambrose* ; and that with the exception of the two learned Judges in *Rex* v. *Oldroyd*, the authorities were uniform in establishing that a party cannot contradict his own witness but by giving evidence of facts bearing upon the issue.

*Holdsworth* v. *The Mayor of Dartmouth*, 2 M. & Rob. 153, was debt on a bond for £1249. The question was, whether the present corporation was bound by the act of the old corporation in giving the bond before the passing of the Municipal Reform Act. Defendant was obliged to call members of the old corporation who took part in giving the bond. One of them, on cross-examination, said that the transaction of giving the bond was, as far as he knew, an honest and a correct transaction. On re-examination he was asked whether he had not told defendant's attorney that it was a shameful transaction, which he denied, whereupon defendant proposed to call his attorney and ask him whether the witness had so said, to which plaintiff objected.

PARKE, B., held the evidence inadmissible, doubting at first whether, as the fact was elicited on cross-examination, the witness was not made, for this purpose, the witness of the plaintiff, and whether, as to this particular fact, not asked to in chief, the party calling him might not show that he had given a different account. He said he never had any doubt that the opinion of BOLLAND, B., in *Wright* v. *Beckett*, was right, if the fact were asked to in the examination in chief, but that he had become satisfied that it made no difference that the fact was elicited on cross-examination.

In *Regina* v. *Ball*, 8 C. & P. 745, in the course of the examination in chief of a witness called by the prosecution, counsel for the crown were not permitted, in order to do away with the effect of the evidence of their own witness, to prove that the statements made by the witness in her deposition before the magistrate were wholly inconsistent with her testimony at the trial. ERSKINE, J., said : " You cannot call a witness, or give evidence not otherwise admissible, for the purpose of discrediting your own witness "; and after conferring with PATTESON, J., he rejected the evidence. In *Regina* v. *Farr*, 8 C. & P. 768, Mr. Justice PATTESON would not allow counsel for the prosecution to even cross-examine their own witness as to statements drawn out on cross-examination by the prisoner's counsel, and which were claimed to be untrue, and not to have been testified to before the examining magistrate.

In The *Lachlibo*, 14 Jur. 192, s. c. 1 Eng. Law & Eq. 645, Dr. LUSHINGTON, on having the authority of the Ecclesiastical Courts passed upon him for the admission of this class of testimony, said that he did not find that those courts had admitted such evidence save in the peculiar cases of what are called " subscribing witnesses," and that he entertained the opinion that in that class of cases there existed a very substantive distinction in their proceedings. In commenting on *Wright* v. *Beckett*, he said the case amounted to permitting a party to do in another mode what he was not permitted to do in a straightforward way, namely, to discredit his own witness by general evidence, and that if he was compelled to choose between authorities, great as that of Lord DENMAN was, he should give his opinion in support of the determination of BOLLAND, B., and that all the authorities, with the

exception of two, were in favor of the view taken by him, and that those two cases, which he did not think rightly fell within the subject he was discussing, were criminal cases, and touched upon the question of looking at the depositions given before the magistrates, and allowing them to produce an effect on the jury. *Melhuish* v. *Collier*, 15 Q. B. 878, is probably the last English case on this subject, as the question was soon after set at rest by the Common-Law Procedure Act.  It was there held that a party might examine his own witness touching prior contradictory statements, not for the purpose of discrediting the witness, but of reminding him, and getting him to correct himself if he would. Although the exact point under discussion was not raised in that case, yet PATTESON and COLERIDGE, JJ., say that there is a distinction between asking questions of a witness in the box as to statements he may have formerly made, and calling other witnesses to say, in contradiction to him, that he made such statements.   EARLE, J., said the point was one on which judges had differed, and that opinions might vary to the end of time.

This question has been settled in England by the act referred to, whereby it is enacted that " a party producing a witness shall not be allowed to impeach his credit by general evidence of bad character ;   but he may, in case the witness shall, in the opinion of the Judge, prove adverse, contradict him by other evidence, or, by leave of the Judge, prove that he has made at other times a statement inconsistent with his present testimony ;   but, before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statements."   The Scotch law on this subject is defined by 15 & 16 Vict. c. 27, s. 3, whereby it is enacted that " it shall be competent to examine any witness who may be adduced in any action or proceeding as to whether he has on any specified occasion made a statement on any matter pertinent to the issue, different from the evidence given by him in such action or proceeding ;   and it shall be competent in the course of such action or proceeding to adduce evidence to prove that such witness has made such different statement on the occasion specified."

The great weight of American authority is against the admission of such evidence.   Mr. Greenleaf does not express his opinion on the subject, but says that the weight of authority seems to be in favor of allowing a party to show that the evidence has taken him by surprise, and is contrary to the examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify, or that the witness has recently been brought under the influence of the other party, and has deceived the party calling him.   1 Greenl. Ev. s. 444.   But Judge RED-FIELD, in his edition of that work, thinks the text goes too far, and that the party should be limited to inquiring of the witness as to his prior contradictory statements, and this, for the purpose of setting himself right before the court, and of showing the witness that he is in error, and getting him to correct himself.   Mr. Wharton says, that while a party may contradict his own witness, though it may discredit him, he is not, ordinarily, permitted to impeach him, even though called afterwards by the adverse party, either by general evidence or by proof of prior contradictory statements, and he cites many American cases in support of the text.   1 Whart. Ev. s. 549.   The writer of said article in the Am. Law Rev., in his edition of Steph. Dig. of the Law of Ev. 188, published just after that article was written, in speaking of the English statute, says there seems to be no good reason why such proof may not be given whether the Judge is or is not of opinion that the witness is hostile ; but that, unless by statute in some of the States, such evidence has not, generally, been regarded in this country as admissible.   In *Ellicott* v. *Pearl*, 10 Pet. 432, Judge STORY treated it as clear that a party is not at liberty to discredit his own witness by showing his former declarations on the same subject.   In *Bullard* v. *Pearsall*, 53 N. Y. 230, it is said that there is a great weight of authority sustaining the position that a party cannot discredit his own witness by proof of prior contradictory statements, but that he may be allowed to examine the witness touching such statements, for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his ap-

parent inconsistency, as well as for the purpose of showing the circumstances that induced the party to call him, but that, should the witness deny having made such statements, it would not be proper to allow such statements to be shown by other witnesses. See, also, *Coulter* v. *Express Co.*, 56 N. Y. 585, and *Pollock* v. *Pollock*, 71 N. Y. 137, 152.

In *Adams* v. *Wheeler*, 97 Mass. 67, it was held that a party could not be allowed to prove by other witnesses statements previously made by a witness called by himself, inconsistent with his testimony at the trial, that would not be admissible as independent evidence and could have no effect but to impair the credit of the witness with the jury. In 1869 the common-law rule was abrogated in Massachusetts by an act taken almost *verbatim* from the English statute, omitting the words, " in case the witness shall in the opinion of the Judge prove adverse," and the limitation of the right to prove inconsistent statements by " leave of the Judge " only. We have been referred to *Thayer* v. *Gallup*, 13 Wis. 539, as supporting the position contended for by the plaintiff, but the point was not involved in that case.

The case of *Fairchild* v. *Bascomb*, 35 Vt. 398, is in point. There a witness called by the plaintiff, having testified in chief that at a certain time he drew a will for Mrs. Clark at her request, was asked on cross-examination whether he did not draw that will at the request of John W. Bascomb, and whether he did not so testify before the Probate Court at a time and place named, all which he denied. The defendant was thereupon allowed to show that he did so testify before the Probate Court. This was held error, on the ground that the subject of the defendant's inquiry was new matter, as to which he made the witness his own, and hence could not impeach him by showing his prior contradictory statements.

In *Thornton's Exrs.* v. *Thornton's Heirs*, 39 Vt. 122, the general rule was recognized, but an exception thereto was allowed in the case of witnesses to the execution of a will, which the law compelled the proponents to call; and this is a well recognized exception by all the authorities.

We think that the " anomalous circumstances " of this case do

not take it out of the general rule. The plaintiff was properly allowed to repel the imputations that his witness had cast upon him, but the inquiry went too far when he was allowed to show the witness' prior contradictory statements. Such evidence could have no other effect than to discredit the witness, and show him to be unworthy of belief; and we prefer to adhere to what we deem to be the well-settled rule of the common law on this subject, and leave it to the legislature to determine whether a different rule shall prevail, rather than follow the lead of those who would disregard the rule as not founded in reason.

The testimony to show that Hewett was " somewhat intoxicated " when on his way to the House of Correction just before the shaving, was properly admitted. He had deposed as to what took place in the guard-room at the time of the shaving, and the evidence of his intoxication was admitted as bearing on the state of his mind at that time, the accuracy with which, in that condition, he would be likely to observe and remember what in fact did take place, and the credit due to him as a witness. This is analogous to what was done in *Fairchild* v. *Bascomb*, where it was held competent to show that a witness was still affected by a disease of the brain that he had had a year before, as tending to show that his memory and judgment were less to be relied on than if he possessed full mental health and vigor. The degree of intoxication went only to the weight of the evidence, not to its admissibility. Wharton says that proof that a witness was drunk at the time of the event to which he testifies may be introduced to discredit him. 1 Whart. Ev. s. 418. See *Hartford* v. *Palmer*, 16 Johns. 143. It may be shown, also, that a witness was under the influence of opium when he testified or when the litigated event occurred. Indeed, stupefaction from any cause may always be shown to affect credibility. 1 Whart. Ev. s. 401.

As to the exclusion of Gorry's testimony, the exceptions do not disclose anything on which error can be predicated. It does not appear what reply plaintiff made to Gorry's question, so we cannot determine whether the evidence was competent or not.

The members of the court who were present at the January Term, 1881, when this case was before the court, think that the

other questions raised by the exceptions were then determined against the defendants, and the reasons stated somewhat at length in an oral opinion by the late Chief Justice. We treat those questions, therefore, as *res judicata*, without undertaking to give the ground and reasons of the decision.

Judgment reversed, and cause remanded.