EDWARD A. HOUGH v. HATTIE E. COMSTOCK.

*Assumpsit—Money loaned—Voluntary payments—Evidence.*

1. The law will not imply a promise to repay moneys voluntarily paid by a son to his sister-in-law, without her request, as contributions towards the support of his mother.

2. In a suit by the son to recover the moneys as loaned, in which the defendant does not claim that he agreed to pay any particular sum or portion of the expense of his mother's maintenance, but that he would pay his share, it is competent for the defendant to show the value of the mother's support.

Error to Jackson. (Peck, J.) Submitted on briefs June 30, 1893. Decided July 26, 1893.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Thomas E. Barkworth,* for appellant.

*Austin Blair,* for defendant.

HOOKER, C. J.   Edward A. Hough, the plaintiff, brought this action against his sister-in-law, the defendant, for money which he claimed to have loaned to her, and paid for her at her request.

It appears that, soon after defendant moved to Jackson, plaintiff's mother came to visit her, and spent, upon that and other occasions, altogether, some two or three years at her home, being supported by her.   Defendant testifies that, on several occasions, plaintiff expressed the intention of assisting her in supporting his mother, and contends that all money procured from him was given her for such purpose, and that she did not receive any of it as a loan.

The testimony in support of such claim is as follows: Defendant, being the witness, was asked:

"*Q*. What conversation did you have with Mr. Hough in regard to her support and expenses there, at any time? Tell us what that was.

"*A*. I went into the office one day, and he gave me $40, and I took it.   When I went back, after he had gone out on the road, I gave it back to his bookkeeper, Miss Pettit.   When he came home again, I was in the office, and he handed it back to me, in money.   Said he did not intend I should have paid that back; that he expected to bear his share of the burden of his mother's support.   I said, if I was able, I should not want him to, but I was not; he was, a great deal better than I.   And he said that was all right,—he expected to do it; and I thought he ought to.   This conversation occurred just before his mother went north the first time."

Being interrogated by Mr. Barkworth about a conversation with him, the witness testified:

"*Q*. Didn't you talk with me about it?

"*A*. I certainly did, generally; came to your office, when you had the claim for collection, to see what could be done about it.   I objected to the amount on the ground that I had supported his mother, and he promised to help me in that regard.   I was willing at that time to turn over a mortgage to him, if he would allow me what was just and right for the support of his mother.   He promised to

assist me in taking care of the old lady. I never said I would turn over a mortgage for the amount, provided Mr. Hough would not recognize the moral obligation resting upon him for the support of his mother. I sent Hough a list of mortgages to select from, but expected he would allow me for his share of support. Did not expect to pay the whole, and did not say I had no legal claim against him.

"*Q.* Didn't you state to me that, so far as the money was concerned, or Mr. Hough's claim to have loaned you, that you had had it; that there was no trouble about that?

"*A.* I don't deny I had the money. I don't deny it here. I do deny that I ever asked him for it. He offered it to me. Did not get money in his absence. If I ever got any money of Miss Pettit, she drew the check at his order.

"*Q.* Now, the fact with regard to his mother's coming there was, that you invited her to come first, wasn't it?

"*A.* Yes, on a visit.

"*Q.* And that when she got there the situation was mutually pleasant, and you requested her to stay. Isn't that true?

"*A.* I didn't say anything about it to her. She stayed. Did not insist on her staying. Nothing was ever said about it. She just came, and lengthened out her visit; and during the time Mr. Hough told me he expected to pay his share of his mother's expenses.

"*Q.* What share did he say?

"*A.* I don't know. That is what I am trying to find out,—what he considered his share. * * *

"*Q.* Do you swear positively you did not have on December 1, 1889, from Mr. Hough, $74.33, for the payment of the McKinstry bill?

"*A.* Why, certainly, I did not. There is the receipt in my name.

"*Q.* Didn't you get a check from Miss Pettit on that particular date?

"*A.* I don't think I did, because I never asked him to pay my bills. I never asked him for any money. He always offered it to me. * * *

"*Q.* At the time these moneys were obtained, he had not said a word to you about his mother?

"*A.* He had. Mother came in the fall of 1883, in August, and the spring following I had a talk with

plaintiff.    He gave me the $40 before I went away, because I went right home, and fixed up her room."

Errors are assigned as follows:

1. That it was improper to admit testimony of the value of the support of the old lady by the week.

2. That the court erred in submitting to the jury the question whether any of the moneys claimed by the plaintiff to be due were payments voluntarily made to apply upon the mother's board.

3. That the court erred in instructing the jury that they might find that part of the moneys delivered to defendant by the plaintiff were voluntarily advanced to and received by her, on the understanding that they were to apply on his share of the expense of his mother's maintenance at the defendant's house.

4. That the court erred in submitting any question of fact to the jury.

If the testimony of defendant, quoted, is true,—viz., that the payments were voluntarily made by the plaintiff, and not upon defendant's request, and were made and received as contributions to the support of the mother,—the law will not justify the inference of a promise to repay.    The implication of a promise does not follow the payment and receipt of money, where the facts are inconsistent with it. *Galloway v. Holmes,* 1 Doug. 330; *Wilson v. Wagar,* 26 Mich. 452; *Hunt v. Sackett,* 31 Id. 18; *Keystone Manfg. Co. v. Dole,* 43 Id. 370; *Strong v. Saunders,* 15 Id. 339; *St. Jude's Church v. Van Denberg,* 31 Id. 287; *Godfrey v. White,* 43 Id. 171; *Woods v. Ayres,* 39 Id. 345; *Cicotte v. St. Anne's Church,* 60 Id. 552; *Peters v. Gallagher,* 37 Id. 407; *Coe v. Wager,* 42 Id. 49.    It is not for us, nor was it for the circuit judge, to determine the amount of credence to be given to the defendant's testimony, and he would not have been justified in refusing to allow the jury to determine whether these payments were gratuitous contributions or not.

The remaining question refers to the testimony of defend-

ant in relation to the value of the mother's support. Although there was a notice of set-off, it is clear that it cut no figure as a defense, being practically abandoned. The defendant did not claim an agreement by the plaintiff that he would pay any particular sum or portion of the expense of his mother's maintenance,—merely that he would pay his share. But upon that basis she was claiming a large sum to have been paid for that purpose. We think it was proper to show the expense incurred as compared with the amount paid. Had the amount paid exceeded the value of this support, it would have been a strong argument in plaintiff's favor, while defendant strengthened her case if she showed the amount paid to her to be only a reasonable share of her expenditures.

We find no error in the record; and the judgment will be affirmed.

The other Justices concurred.