IN RE MARY W. CAMPBELL'S WILL.

May Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed October 5, 1927.

*Wills—Witnesses—Cross-examination—Making Witness for Adverse Party Witness for Party Cross-examining—Harmless Error—Party May Not Impeach Own Witness—Rule as to Impeachment Where Witness Improved by Both Parties—Hearsay—Res Gestae—Presumption Arising from Unlawful Destruction of Will—Will Only Revokable During Testatrix's Lifetime Regardless of Her Desires.*

1. In proceedings to establish will, where witness for proponents testified only as to kind of woman testatrix was, and that witness learned from testatrix that will was in certain trunk, it was not proper cross-examination to permit contestants to show all that testatrix had said to witness about will at that time, including statement that testatrix wanted her lawyer to destroy her will that was in his possession, and her husband to destroy the copy in the trunk.

2. Aside from matter of witness' credibility, only that which tends to limit, explain, or refute statements of direct examination, or to modify inferences deducible therefrom, comes within range of proper cross-examination.

3. When party goes beyond limits of such proper cross-examination, he thereby makes witness his own.

4. Although court erroneously permits party cross-examining witness to go beyond limits of proper cross-examination thereby making such witness his own, if nothing else is involved, error is harmless, since time and order of admission of evidence lie in court's discretion.

5. Subject to certain exceptions, a party is not allowed to impeach his own witness.

6. Where by reason of going beyond limits of proper cross-examination, party makes his adversary's witness his own, so that witness thereby becomes as much a witness for one party as

for the other, no impeachment by either party, even with respect to testimony elicited by other party, is permissible.

7.  In proceedings to establish will, where attorney testified that he had prepared will for deceased, which she left in his custody, and that about four years before her death, she came to his office and destroyed this will, of which he had previously made and given her a copy, testimony of another witness in corroboration, to effect that about same time testatrix had visited her and said that she had been to such attorney's office and had her will destroyed, *held* not receivable under *res gestae* doctrine, but to be mere narrative of past transaction, and its admission constituted prejudicial error.

8.  For statement to be admissible under *res gestae* doctrine, there must be some act which it accompanies and characterizes or explains, the credit which it derives from such act, and its tendency to elucidate act, being what distinguishes declaration from mere hearsay.

9.  Intentional but unlawful destruction of will after testatrix's death, though done innocently and in good faith, gives rise to presumption of its due execution.

10.  Although testatrix may have desired to revoke her will, and no matter how explicit directions she may have given, unless such desire was consummated and her directions carried out in her lifetime, they never lawfully could be.

APPEAL from decree of probate court for district of Rutland, denying probate of instrument as last will and testament of Mary W. Campbell. Trial by jury at the September Term, 1926, Rutland County, *Chase*, J., presiding. Verdict and judgment for contestants. The proponents excepted. The opinion states the case. *Reversed and remanded.*

*Marvelle C. Webber* for the proponents.

The court erred in charging, on the subject of fraud and spoliation in tearing out of pages from will, and presumption arising therefrom, that it was essential to show an evil intent in tearing out such pages, all that was necessary being to show that it was done intentionally. Page on Wills, Vol. 1, 2nd ed., § 794; *In re Lambie's Estate*, 97 Mich. 49, 56 N. W. 223; *Gomez & Co.* v. *Hartwell*, 97 Vt. 147, 152; *Arbuckle* v. *Templeton*, 65 Vt.

205; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294, 329; *Mc-Cleery* v. *McCleery,* 200 Ala. 4, 75 So. 316; *Hudson* v. *Hudson,* 287 Ill. 286, 300, 301, 122 N. E. 497; *Moore* v. *Molloy Co.,* 222 Ill. App. 295, 298; *Anderson* v. *Irwin,* 101 Ill. 481; *In re Dorrity,* 194 N. Y. S. 573.

The court erred in permitting testimony of witness as to a conversation had between her and testatrix four years before latter's death in regard to an alleged destruction of a will of hers, as will could only be revoked as provided by statute, and declarations of testator not accompanying act are mere hearsay. G. L. 3212; *Waterman* v. *Whitney,* 11 N. Y. 157, 62 A. D. 71; *In re Noyes' Will,* 61 Vt. 14; *Blanchard* v. *Blanchard,* 32 Vt. 62, 64; *Giles* v. *Giles,* 204 Mass. 383, 90 N. E. 595; *Throckmorton* v. *Holt,* 180 U. S. 552, 21 Sup. Ct. 474; *Robinson* v. *Hutchinson,* 26 Vt. 38; *Richardson* v. *Richardson,* 35 Vt. 238.

*Jones & Jones* and *Lawrence, Stafford & Bloomer* for the contestants.

Fraud involves evil intent and is a matter to be proved, not presumed. See definition of "Fraud," Webster's Int. Dict., Words & Phrases, 2946; 12 R. C. L. 424; 28 A. L. R. 86; 44 A. L. R. 871.

In proving a lost will, burden is on proponents to show first that such will was once in existence, and evidence must be "full and satisfactory." *Dudley* v. *Wardner,* 41 Vt. 59, Page on Wills, 517.

Proponents of will were properly refused permission to impeach their own witness. *Stukely Thornton's Exr.* v. *Thornton's Heirs,* 39 Vt. 122; *Cox* v. *Eayres,* 55 Vt. 24, 45 A. D. 583.

It was not error to admit testimony of witness as to declarations by testatrix, four years previously, as said declarations were made at approximately time of destruction of will, and were admissible as part of the *res gestae* and also to corroborate testimony of witness who testified to destruction of will by testatrix. *Sugden* v. *St. Leonards,* L. R. 1 P. D. 154; *Keene* v. *Keene,* L. R. 3 P. & D. 107; *In re Lambie's Est.,* 97 Mich. 49, 56 N. W. 223; *Burton* v. *Wylde,* 261 Ill. 397, 103 N. E. 976; Jarman on Wills (6th ed.) 147; Page on Wills, §§ 443, 450; Schouler on Wills, § 403; Johnson's Will, 40 Conn. 587; *Lawyer* v. *Smith,* 8 Mich. 411; *Patterson* v. *Hickey,* 32 Ga. 156; *Pickens* v. *Davis,* 134

Mass. 252; *Collagan* v. *Burns,* 57 Me. 449; *Warner* v. *Warner's Estate,* 37 Vt. 356; *Tucker* v. *Whitehead,* 59 Miss. 594; *Patterson* v. *Hickey,* 32 Ga. 156; *Hargraves* v. *Redd,* 43 Ga. 142; 2 Whart. Ev., § 895; *Minkler* v. *Minkler,* 14 Vt. 125; *Youse* v. *Forman,* 5 Bush. 337; *Lillie* v. *Lillie,* 3 Hagg. Eccl. Ref. 184; *Weeks* v. *McBeth,* 14 Ala. 474; *Rickards* v. *Mumford,* 2 Phillim Eccl. Ref. 23; *Boudinot* v. *Bradford,* 2 Dall. 266, 1 L. ed. 375; *Law* v. *Law,* 83 Ala. 432; Spencer's Appeal, 77 Conn. 638, 60 Atl. 289; *Behrens* v. *Behrens,* 47 Ohio St. 323, 25 N. E. 209; *Coghlin* v. *Coghlin,* 29 Ohio C. C. 251; *Smiley* v. *Gambill,* 2 Head, 163; *Bibb ex dem, Mole* v. *Thomas,* 2 W. Bl. 1043; *Colvin* v. *Fraser,* 2 Hagg. Eccl. Ref. 266; *Reed* v. *Harris,* 7 Car. & P. 330; *Keene* v. *Keene,* L. R. 3 Prob. & Div. 105; *Monagale, Admx.* v. *Parker,* 75 N. H. 139, 24 L. R. A. (N. S.) 180.

POWERS, J. This is an attempt to establish a certain document as the last will and testament of Mary W. Campbell, who died at Rutland on January 24, 1926, leaving a surviving husband, William E. Campbell, and certain heirs at law. The instrument was disallowed in the probate court and in the county court on appeal. The proponents bring the case here on exceptions. The instrument in question purports to be a will and is in the usual form of such documents, but it is unsigned and unwitnessed, and wholly wanting in the formalities of due execution. It is the theory of the proponents that the two or more sheets containing these were removed and destroyed after Mrs. Campbell's decease. The contestants contend that the instrument propounded is but a copy of a will destroyed by Mrs. Campbell some years before her death. There was evidence tending to show that a few hours before her death, Mrs. Campbell told a Mrs. Stevens, who was staying there, that this instrument was in a certain tin trunk and that she wanted it destroyed. This Mrs. Stevens agreed to see done. That about a week later, at the request of Mr. Campbell, Mrs. Stevens brought out the instrument, and one O'Brien who had been called in, tore out the two sheets at the back of the instrument and they were destroyed. The stubs of these sheets appear on the instrument. After the two sheets were torn out, the instrument was put back in the tin trunk, and that put away. Mrs. Stevens was improved as a witness by the proponents. By her, they showed something of the kind of woman Mrs. Campbell was, and that she, the wit-

ness, learned that the instrument was in the trunk from Mrs. Campbell. This is all that the proponents brought out regarding the instrument. On cross-examination, the contestants were allowed to show all that Mrs. Campbell said about the instrument at that time; and they drew from the witness the statement that Mrs. Campbell said that she wanted O'Brien to destroy her will that was in his possession and she wanted her husband to destroy the copy that was in the tin trunk. To the ruling that this was proper cross-examination, the proponents excepted. The fact that the proponents had, in effect, put in evidence a part of a statement of Mrs. Campbell did not, of itself, entitle the contestants to put in all of that statement. The latter could give in evidence whatever Mrs. Campbell then said that tended to qualify, explain, or contradict what Mrs. Stevens had testified to, but no more. *Turner* v. *Howard*, 91 Vt. 49, 53, 99 Atl. 236; *Adams* v. *Cook*, 91 Vt. 281, 286, 100 Atl. 42. To this extent cross-examination goes.

[1-4] While it is sometimes difficult to determine what is within and what is without the scope of the direct examination, it can safely be said that the credibility of the witness aside, only that which tends to limit, explain, or refute the statements of the direct examination or to modify the inferences deducible therefrom comes within the range of proper cross-examination. *State* v. *Kelsie*, 93 Vt. 450, 453, 108 Atl. 391. Thus far, opposing counsel may go as a matter of right. Beyond this, the court cannot properly allow him to go, without making the witness his own. The only fact established for the proponents by Mrs. Stevens was the place where the instrument was deposited. Anything that Mrs. Campbell then said relative to that would be cross-examination. But her characterization of the paper as a copy of her will and wanting it destroyed had no tendency to qualify or explain her statement that it was in the tin trunk. In giving this testimony, Mrs. Stevens was the contestants' witness. It had no tendency to discredit the witness or impair the probative force of the testimony given by her. If this was all there was to it, the error would be harmless, as it was within the court's discretion to allow the evidence to come in at that time, as the proponents were not thereby prejudiced.

But the importance of all this lies in its effect, if any, upon the proponent's right to impeach the witness by showing that she had made statements inconsistent therewith on previous

occasions,—as the proponents offered to show, but were not allowed to.

[5, 6] It is a familiar rule that a party is not allowed to impeach his own witness. *Cox* v. *Eayres,* 55 Vt. 24, 28, 45 A. R. 583. This rule is subject to some exceptions not now applicable. But here is a witness who was improved by both sides. She was as much the witness of one as the other. How does the rule apply in such a case? As is shown by *Town of Barnard* v. *Henry,* 25 Vt. 289, 294, and *Fairchild* v. *Bascomb,* 35 Vt. 398, 417, having made the witness their own, the contestants could not give in evidence impeaching testimony regarding the facts they elicited from her.

But these cases are not authority for the proposition that they were estopped from proving prior or subsequent statements of the witness inconsistent with the evidence she gave when testifying as proponents' witness. On that question the decisions are in conflict. Some say that in such circumstances, the one testifying is the witness of each party only to the extent of the testimony elicited by that party, and that either party may discredit him by showing inconsistent statements as to matters testified to in favor of the other party. *Hall* v. *Manson,* 99 Iowa, 698, 68 N. W. 922, 34 L. R. A. 207. Others hold that, in the circumstances named, no impeachment by either party is permissible.

This Court is committed to the latter rule. In *Thornton's Exrs.* v. *Thornton's Heirs,* 39 Vt. 122, 151, after supposing a situation essentially like the one here, the Court said: ''The witness remains the witness of the party who produced him, so far that he may not be impeached by that party,'' citing *Fenton* v. *Hughes,* 7 Ves. Jr. 287, and *Ellicott* v. *Pearl,* 10 Pet. 412, 9 L. ed. 475. In the former of these, in speaking to this point, the Lord Chancellor said: ''As to that, at the Old Bailey the judges would not permit that to be done, even upon examination in reply; holding that you give him credit by calling him; and they would not permit you to breathe a suspicion against him, if you did not like his cross-examination. That, I was informed, had been settled upon conference by all the Judges.'' In the latter, one McNeal had been improved as a witness by both parties, and the party producing him attempted to discredit him as to matters brought out by his adversary; the Court, speaking through Mr. Justice Story, said: ''But in truth, the evidence

was offered to discredit, in part, his present testimony; and certainly the demandants were not at liberty to discredit their own witness by showing his former declarations on the same subject.'' So it appears that these cases fully sustain the point to which they are cited. It is true that the above quoted statement of this Court was not necessary to the decision of the case then in hand, for the witness involved was an instrumental witness and was excepted from the operation of the rule. But, if a *dictum*, the statement was a judicial *dictum*, for the report shows that the point was briefed by counsel and considered by the Court.

So this exception is not sustained.

Whether it was permissible to ask Mrs. Stevens about her former statements for the purpose of ''probing her mind'' to induce her to modify or correct her testimony is a question not raised or considered.

[7, 8] . O'Brien testified that he once made a will for Mrs. Campbell, which she left in his custody; that about four years before her death, the testatrix came to his office and destroyed this will, a copy of which he had previously made and given to her. There were circumstances disclosed by the evidence tending to discredit this testimony, and it was of first importance for the contestants to corroborate O'Brien's story, if possible. To do so, they were allowed to show by Mrs. Stevens that shortly before her own husband's death which was about four years back, Mrs. Campbell called on her, and during their visit told her that she had been to O'Brien's office and had her will destroyed. To this the proponents excepted. Here was fatal error. The only ground on which such evidence can be received is the *res gestae* doctrine. There must be some act which it accompanies and characterizes or explains. It is the credit which the statement derives from the act it accompanies and its tendency to elucidate the act that distinguishes the declaration from mere hearsay. This is all made plain by *Comstock's Admr.* v. *Jacobs,* 89 Vt. 133, 144, 94 Atl. 497, Ann. Cas. 1918A, 465, where the subject is carefully and clearly treated. Tested by this rule, the statement in question obviously lacks every essential to its admissibility. It was a mere narrative of a past transaction. The suggestion that the statement was made when the declarant was on her way home from O'Brien's office is unwarranted by the transcript; for aught that appears, it was some

time after the date of the alleged visit. By saying this, we are not to be understood as intimating that it would make any difference with the result had this fact appeared.

It is here argued that the testimony was admissible to prove her intent, the *animo revocandi,* but it is apparent from the record that it was not received for that purpose. It was offered and received to prove the fact embodied in the decedent's statement. Indeed, it is said in the contestant's brief that they "undertook to introduce corroborative evidence of revocation by a declaration made by the deceased * * *." So we take no time with this claim.

The error we have found is of such a character that we have no doubt that it resulted in harm to the proponents.

[9, 10]  The court charged the jury to the effect that the destruction of the instrument after Mrs. Campbell's death as the evidence tended to show would raise a presumption of due execution only if done fraudulently, and explained that this meant "with evil intent, the intent to do someone a wrong or injustice and benefit Mr. Campbell." To this instruction the propenents excepted.

It is said in 40 Cyc. 1279, that, if a will had been fraudulently suppressed or destroyed, it is presumed to have been legally drawn and executed. The text is predicated upon *In re Lambie,* 97 Mich. 11, 56 N. W. 223. The term fraud is used in various senses. It may involve an evil intent or it may consist only of a wrongful act intentionally done to the injury of another. The former is actual fraud, the latter constructive. The former involves moral turpitude or intentional wrong. The latter may exist without the imputation of bad faith or immorality. *Neal* v. *Jones' Exrs.,* 95 U. S. 704, 24 L. ed. 586, 587. We recognized the existence of this distinction in *Flanders* v. *Mullen,* 80 Vt. 124, 127, and in *Miller* v. *Belleville,* 98 Vt. 243, 248.

If the term "fraud" or "fraudulent" has any place in the rule under discussion, it is to be understood in its innocent sense, and does not involve an evil intent. It does not appear in the rule as given in 1 Page, § 794, wherein it is said in effect that when it is shown that an interested party has suppressed the will, a presumption arises that it was duly executed. Nor does *In re Lambie, supra,* indicate that an evil intent is necessary to give rise to the presumption. On the contrary, it is authority for the proponents here and supports the rule taken from Page,

as above.  This case also shows that when necessary the law will prevent the perpetration of a fraud by permitting a presumption to supply the suppressed proof.

*McCleery* v. *McCleery*, 200 Ala. 4, 75 So. 316, gives "unqualified approval" to the Lambie case.  The court therein states the whole matter in this way:  "* * * *  There should be presented by him whose right or interest is supposed to be prejudiced by the destruction of the instrument, evidence of a general character, reasonably calculated to invite the conclusion that an instrument of the type in question existed, and that it was purposely destroyed, or caused to be destroyed by his adversary."

*In re Dorrity's Will*, 118 Misc. Rep. 725, 194 N. Y. S. 573, 575, involved the construction of a statute which provided for the probate of a will that had been "fraudulently destroyed." It was held that, though there was no actual fraud or an intention to profit by its destruction, the will in question was "fraudulently destroyed" within the meaning of the statute, since its destruction was without the knowledge or consent of the testatrix and to the injury of the beneficiaries thereunder, which constituted constructive fraud.

In *Hudson* v. *Hudson*, 287 Ill. 286, 122 N. E. 497, the rule is thus stated:  "It is a rule of evidence that everything will be presumed against the despoiler, where a party to a suit has intentionally destroyed material evidence in a case, every presumption will be indulged against him."

We are well satisfied that the rule is thus correctly stated and therefore hold that the intentional but unlawful destruction of this will,—if such it was,—though done innocently and in good faith, gave rise to the so-called presumption of due execution.  That such destruction was unlawful cannot be questioned. However, much Mrs. Campbell may have desired to revoke her will, no matter how explicit directions she may have given, unless her desires were consummated and her directions carried out in her lifetime, they never lawfully could be.

*Reversed and remanded.*